ELBRIDGE BACON

*vs.*

CASCO BAY STEAMBOAT COMPANY.

Cumberland.    Opinion February 26, 1897.

*Negligence. Common Carrier. Exceptions. Evidence.*

The degree of care which the law requires shall be exercised, for the protection and safety of its passengers, by a steamboat company plying the waters of Casco Bay with its boats, after it ceases to be acting as a common carrier, and becomes merely a tenant or occupier of a wharf at which it makes landings, and over which its passengers pass in going to or departing from its boats, is that of reasonable diligence, or of common care and prudence; and what is reasonable care must depend on the circumstances. It is to be measured by the conditions and situations to which it is to be applied.

Exceptions do not lie to the admission of testimony which is either slightly corroborated of other proper testimony, or else immaterial.

ON EXCEPTIONS BY PLAINTIFF.

This was an action on the case for negligence. The case is stated in the opinion.

*Edward Woodman*, for plaintiff.

Degree of care:—*Tobin* v. *R. R.*, 59 Maine, 183; *Knight* v. *R. R.* 56 Maine, 234; *Quimby* v. *R. R.* 69 Maine, 340; *Keefe* v. *R. R.* 142 Mass. 251; *McDonald* v. *R. R.* 26 Iowa, 124; *Weston* v. *R. R.* 73 N. Y. 595; *Hoffman* v. *R. R.* 75 N. Y. 605; *R. R.* v. *Fillmore*, 57 Ill. 265; *R. R.* v. *Scates*, 90 Ill. 586; *Seymour* v. *R. R.* 3 Biss. 43; *R. R.* v. *Harmon*, 147 U. S. 571.

Admission of evidence:—*Ellis* v. *Short*, 21 Pick. 142; *Farnum* v. *Farnum*, 13 Gray, 508; *Maguire* v. *R. R.* 115 Mass. 239; *Brown* v. *Cummings*, 7 Allen, 507; *Branch* v. *Libbey*, 78 Maine, 321; *Parker* v. *Port. Pub. Co.*, 69 Maine, 173.

*Clarence Hale and Stephen C. Perry*, for defendant.

SITTING: PETERS, C. J., WALTON, EMERY, WHITEHOUSE, WISWELL, STROUT, JJ.

PETERS, C. J.   This is an action on the case for negligence. The verdict was for the defendants.   The principal facts and the rulings of the judge are embodied in the bill of exceptions as follows:—

"It appeared in evidence that the defendant was a common carrier of passengers for hire, operating a line of steamboats between the City of Portland and the Islands in Casco Bay, and that it had acquired the exclusive right to land passengers at a wharf on Cushing's Island to which its steamboats made regular trips for the accommodation of travelers both day and evening; that one of its employees lived upon said wharf and was charged with the duty of taking the steamer's lines, setting lights in the night time, and handling baggage and freight upon the wharf.

It also appeared that the plaintiff, on the sixteenth day of August, 1894, purchased a ticket of defendant, entitling him to passage upon said steamboats from Portland to Cushing's Island, and thence back again to Portland; that he was carried to Cushing's Island on one of the defendant's steamboats, on the afternoon of that day, and returned to their wharf on Cushing's Island after nightfall, at about eight o'clock, and that, while waiting upon the

wharf for a steamer, he fell into a rectangular opening in the planking of said wharf, used as a driveway, and broke his leg.

Plaintiff declared upon the negligence of the defendant in failing to provide said opening with a suitable guard rail, and also for failing to properly light the same after nightfall.

Both plaintiff and defendant introduced plans and photographs of the wharf, in evidence, which are to accompany this bill of exceptions. There was also a view of the premises by the jury.

The evidence tended to show that the customary path for the ingress and egress of passengers to and from defendant's steamboats, was by a gangway passing along the easterly side of the opening in which defendant fell, which gangway is denominated the 'passenger platform' on defendant's plan of the premises, and that plaintiff fell into the opening from a similar gangway passing along the westerly side of said opening, which gangway is denominated the 'freight platform' upon defendant's plan.

The latter gangway or 'freight platform' led to the door of a room called on said plan the 'baggage room', which room contained a closet, above the door of which was the sign 'Men's Toilet.'

Plaintiff testified that after passing over the usual gangway or 'passenger platform,' to the outer portion of the wharf and remaining there a short time, he felt cold, and seeing a light in the 'baggage room' he sought shelter in that room, remained there a few minutes and that thinking that he heard some one say that the boat was coming, he came out and turned to walk toward the outer end of the wharf, and while walking along the so-called 'freight platform' he stepped off the edge of it and fell.

Defendant introduced evidence tending to show that the plaintiff, while waiting for the steamer, was wandering about upon the wharf in a rather idle and aimless manner, and that in passing to the 'baggage room' he necessarily passed directly by the open door of another room called upon the plan the 'waiting room', which room was the one provided for passengers to resort to for shelter, and that when returning from the 'baggage room' toward the outer end of the wharf, where he was to go on board the steamer, he 'swayed about', lost his balance, and fell into the opening in

question; that there was no light placed within the 'waiting room' which was lighted only by a lantern standing outside upon the westerly corner of the wharf, in such position that a portion of its light came in through a window in the front of the 'waiting room'. As to the position of the lights on the wharf and their sufficiency, the evidence was conflicting.

Upon the question of the duty of the defendant to maintain a safe and convenient landing place for its passengers, the presiding justice charged the jury as follows:—

As the defendant attempted to provide a landing place in the shape of a wharf at Cushing's Island, the law required of it reasonable diligence in making that place of exit, of ingress and egress from their steamers, that is, an opportunity to go ashore and to come on board, safe. It required of them reasonable diligence to make that chance to go ashore and to come on board safe; and that diligence must be measured under the particular time and circumstances and place and occasion when their passengers desire the opportunity to exercise it. For instance, in midday reasonable diligence might require of them to provide a different opportunity to go ashore and to come on board than would be required in the evening or after dark. In midday no lights would be required; after dark, lights might be required. Now at this time it appears that the defendant company maintained a wharf, or were in use of a wharf for passengers to go upon, to remain and take passage upon their steamers; and for them to do that, both by day and by night, they were required to use reasonable diligence to make that chance to go on board their boats safe for their passengers.

Counsel for the plaintiff at the close of the charge requested the following instruction to the jury:—

'It was the duty of this Steamboat Company to keep in safe condition all parts of this platform, as well as its approaches thereto, to which its passengers were expressly or impliedly invited, and to which they would be likely to resort while waiting for the arrival or departure of its boats.' This request was refused excepting as already given in the judge's charge."

VOL. XC.   4

We think that the exception to the rule given by the judge as to the degree of care required of the company cannot prevail, nor can the exception to the refusal to give the instruction requested.

The rule given was that of ordinary and reasonable care, while the rule asked for would virtually amount to insurance. Reasonable care, caution and prudence were to be necessarily exercised by the company. The expression used by the judge was "reasonable diligence," meaning of course that diligence which would be deemed reasonable by reasonable and prudent men under the circumstances. The more the risks the more is the diligence required in order to be regarded as reasonable. A diligence more than reasonable, an unreasonable diligence, was not required.

There are a great number of definitions of negligence and diligence, correlative terms, given by authors and judges, to be found in the law dictionaries, all of which mean about the same thing although differently expressed. Perhaps a definition of negligence approved by the Pennsylvania court is the most comprehensive of any, "The absence of care according to circumstances." A definition favored by the United States Supreme court is this : "The failure to do what a reasonable and prudent person would do under the circumstances of the situation, or the doing what such a person under the existing circumstances would not have done." Mr. Bigelow, in his book on Torts, p. 261, says: "It is conceded by all the authorities that the standard by which to determine whether a person has been guilty of negligence is the conduct of the prudent, or careful, or diligent man." The standard of care required by the judge in the present case embodies a definition tantamount to those above quoted, although it might have been more expanded or intensified in its terms, but that was by no means necessary.

We are not aware, however, that the plaintiff contends that the ordinary standard of care was not correctly and sufficiently defined by the court, but the contention is that more than ordinary care, really extraordinary care, should have been exercised by the company, in order to insure absolute safety for the plaintiff in his going and coming, and the able counsel for the plaintiff relies on scattered cases in the reports where may be found expressions, like

that contained in the requested instruction to the effect that the company was bound to keep his wharf and its approaches safe and convenient. Such language is not altogether inappropriate, but it is not exact enough, when applied to the present case, and only means, in most cases, that carefulness and prudence must be exercised to effect security or safety, but not that such a result shall positively and absolutely be secured. The latter rule is the doctrine of this state, at least as settled in the late case of *Lasky* v. *The Can. Pac. Railway Co.*, 83 Maine, 461. See authorities there cited.

Furthermore, the force of the distinction between common or ordinary care and extraordinary care, the highest degree of care, a distinction found in the civil law and adopted by English and American courts principally as applicable to the law of bailments, has been greatly diminished in modern times for the reason that extraordinary diligence is no more than an ordinary requirement in extreme situations and conditions. The tendency with many courts is to call all cases of the kind simply cases of negligence, ignoring the ancient classification. In all cases the amount of care bestowed must be equal to the emergency, however the standard be denominated. We do not mean to say that the distinction between ordinary and gross negligence, or between ordinary and extraordinary care does not still exist, but, in reply to the suggestion made by the plaintiff's counsel that the same extreme degree of care should be exercised by the defendants when wharfingers, or tenants of a wharf used in conjunction with their boats, as is imposed on them while common carriers of passengers, we do mean to say that we perceive no reason for imposing so extreme an obligation upon the defendants when they have completed their trip and ceased to be longer performing the duties of common carriers; and the authorities do not support any such application of the rule of extraordinary care as is contended for. In fact, the tendency of decision is, as before intimated, more likely to be the other way, if there be any solid difference between negligence of one degree and negligence of another degree, or between reasonable care and extraordinary care.

Another question arose during the trial, where an exception was taken to the admission of certain, as it is claimed, inadmissible testimony. The question is presented by a portion of the reported case, reading as follows : "The plaintiff introduced evidence tending to show that, at the time of the accident and injury complained of, the place where the accident occurred was dark, and that there was no light at or near that place. The defendant introduced evidence tending to show that there was, at that time, a light hanging on the wall between the doors of the 'baggage room' and the 'waiting room,' in such a position that the whole scene of the accident was brightly and sufficiently lighted, and that the wharf was otherwise sufficiently lighted. The plaintiff called a witness who testified, in substance, that after the accident and before the boat arrived, he went to the place where the plaintiff fell, and that it was dark, that there were no lights there. Thereupon the defendant called the wharfinger, who testified that said light was, within a brief time after the accident, discovered by him upon the floor just within the door of the 'waiting room,' and that he again, and before the arrival of the steamboat, hung it upon the wall between the doors of said two rooms, and then the captain of the boat, that arrived some five or ten minutes after the accident, was allowed to testify in behalf of the defendant, that at the time of the arrival of the boat, a light hung on the wall between the two doors of said rooms."

Whilst this does not appear to be at all an important question, we are of opinion that the admitted testimony had a tendency to slightly corroborate the employees of the company, who had previously testified, in a part of his statement, or else had no effect whatever and was therefore entirely immaterial. It had some force to repel any argument that the employee's story was an entire fabrication.

*Exceptions overruled.*