# B'ham Ry. L. & P. Co. *v*. Cockrum.

## *Injury from Electricity.*

(Decided December 5, 1912.  60 South. 304.)

1. *Negligence; Complaint; Sufficiency.*—The rule that negligence may be averred in general terms does not relieve a plaintiff from bringing himself within the principle of the negligence charged by averring facts of the relationship from which a duty springs.

2. *Same; Simple Negligence.*—A complaint which charges simple negligence and shows that plaintiff was not on the property of the defendant or did not come in collision with the wires at a point where she would be a trespasser, states a cause of action for simple negligence although it fails to allege whether the plaintiff was or was not rightfully on the property of another at the time of the accident.

3. *Same; Wantonness.*—To constitute wantonness the wrong doer must be conscious of his conduct, and also, from his knowledge of existing conditions, that injury will likely result from his conduct, and must, with reckless indifference to consequences intentionally do a wrongful act, or omit a known duty producing injurious results.

4. *Appeal and Error; Evidence; Conclusiveness.*—On appeal the court must assume that the uncontradicted testimony of a witness was true.

[B'ham Ry. L. & P. Co. v. Cockrum.]

5. *Evidence; Self-Serving Declarations.*—Plaintiff suing for a personal injury could not testify as to how she did her household work before her injuries and did not do it afterwards because a self-serving declaration; nor should other witnesses be permitted to testify to such fact and for the same reason.

6. *Electricity; Injury; Production and Use; Care Required; Ordinances.*—Under an ordinance providing that where angles occur in electric line subjecting the poles to increased strain guard irons must be placed at the outer end of the cross arms, and guard wires wherever their presence will prevent telephone, telegraph or other wires from coming into contact with electric light and trolley wires; and that where it was necessary for electric light or trolley wires to run under telephone, telegraph or fire alarm wires, permission must be granted to do so and the company running the wires will pay the expense, etc., the company last erecting its wires is required to erect and maintain a guard wire and where a telephone company erected its wires after the erection of trolley wires, it was its duty to erect an extra guard.

7. *Same; Negligence; Complaint.*—In an action against an electric company for injuries caused from shock a complaint alleging that the plaintiff, while between an alley and a church at a place where she had the right to be, and was not a trespasser, was shocked by coming in contact with a wire heavily charged with electricity, and that the injuries were proximately caused by the defendant's negligence, states a cause of action for simple negligence, as it shows that plaintiff was not at the time, on the property of the defendant, notwithstanding the allegation was objectionable as a mere conclusion that she was not a trespasser and was at a place where she had a right to be.

8. *Same; Care Required.*—Where electric wires are maintained by different companies in the street of a city each company owes the public and individuals the duty of preventing a contact of the wires which may result in injury to property or persons, and the mere fact that the municipal ordinance requires the company last erecting wires to maintain guard wires does not relieve the company first erecting its wires from the common law duty of safeguarding its agencies to afford reasonable protection to the public as against injuries from crossing or contact with the wires.

9. *Same; Issue; Proof and Variance.*—Where the complaint alleged that the shock was received while plaintiff was on the sidewalk and the proof showed that she was on the land of a third person, the variance was immaterial, where the wires were not strung over the land in such a way as to make plaintiff a trespasser by coming in contact with the wires in their proper place.

10. *Same; Negligence; Evidence.*—The evidence examined and held to show negligence of the defendant causing injury by the wires of the defendant coming in contact with the wires of the telehphone company.

11. *Same.*—Where the action was for negligence of the company growing out of the manner of erecting and maintaining its wires in a street and the evidence showed that plaintiff was injured while on the lot of a third person, evidence of the condition of the lot and how used and whether the use was permitted, was immaterial and irrelevant.

12. *Charge of Court; Credibilty of Witness.*—It is proper to charge that if the jury believe that a witness has made contradictory statements as to any material fact they may consider such statements in determining the weight to be given the testimony, and a refusal to so charge cannot in this case be justified on the ground that such charge was abstract.

13. *Same; Exceptions to.*—An exception to an instruction must recite the instruction and give the court an opportunity to correct and modify same, hence an exception merely to a charge on the subject, without setting out the charge is not sufficient.

APPEAL from Jefferson Circuit Court.

Heard before Hon. E. C. CROWE.

Acton by Nannie C. Cockrum against the Birmingham Railway, Light & Power Company. From a judgment for plaintiff, defendant appeals. Reversed and remanded.

The following are the counts discussed in the complaint: (2) Wantonly or willfully or intentionally causing a wire to be heavily charged with electricity, with the knowledge that plaintiff would probably be injured thereby, and with reckless disregard of the consequences. (3) "Plaintiff claims of the defendant, a body corporate, doing business as a street railway company in Jefferson county, Alabama, the sum of $50,000 as damages, for that on, to wit, August 10th, plaintiff, while in the city of Birmingham, between Alley B of said city and that German-Lutheran Church which is on the southeast corner of Avenue B and Nineteenth Street South, in said city, at a place where she had a right to be, and was not a trespasser was severely shocked by coming in contact with a wire heavily charged with electricity. [Here follows a catalogue of injuries and damages.] Plaintiff avers said injuries were proximately caused by the negligence of defendant's servants or agents while acting within the line and scope of their employment, which negligence consisted in this: The servants and agents aforesaid negligently

caused the wire aforesaid to be heavily charged with electricity." (4) Same as 3, except that wanton, willful, or intentional negligence is charged. (5 and 6) Allege the same facts as 3, and rely for negligence on the violation of the following ordinance:

"Section 369. Guard Irons.—Where angles occur in the lines, subjecting the supports to increased strains, guard irons must be placed at the outer ends of the cross-arms. Guard wires must also be placed whenever their presence will prevent telephone, telegraph, or other wires from coming into accidental contact with an electric light and trolley wires for the street railroad. Whenever it is necessary for electric light, power, or trolley wires to be run under telegraph, telephone, or fire alarm wires, permission shall be granted to do so; but the company running such wire or wires shall pay the expense of raising the other wires, if lawfully constructed, so that the said wires shall not be less than five feet above said electric light, power, or trolley wire, to make them entirely safe. Whenever any telegraph or telephone company wishes to stretch wires above any electric light, power, or trolley wires, they must cross not less than five feet above said wires. The guard wire above each trolley wire must consist of two wires not less than ten guage and be tightly strung not less than two feet above said trolley wire, and twelve inches on each side; but when strung on poles, center street connection, one guard wire shall suffice. The cost of such guard wire and guard iron and change of poles shall be borne by the person or company making the last construction."

The following is charge 20: "If the jury believe from the evidence in this case that plaintiff's husband, Charles C. Cockrum, has made a contradictory statement as to any material facts in evidence in this case,

the jury may consider such contradictory statement in determining what weight they will give the testimony of said Charles C. Cockrum."

TILLMAN, BRADLEY & MORROW and L. C. LEADBEATTER, for appellant. No brief reached the Reporter.

DENSON & DENSON, for appellee. No brief reached the Reporter.

ANDERSON, J.—It has been repeatedly held by this court that, notwithstanding negligence may be charged in most general terms, this rule does not relieve the plaintiff from bringing himself within the protection of the negligence charged by averring the facts showing the relationship of the parties and from which the duty springs.—*L. & N. R. R. Co. v. Holland,* 164 Ala. 73, 51 South. 365, 137 Am. St. Rep. 25; *Sloss-Sheffield Co. v. Bibb,* 164 Ala. 62, 51 South. 345.

We think, however, that count 3 meets these requirements by showing that the plaintiff was not a trespasser upon the defendant's property, and that she was in a position to invoke the simple negligence as charged in said count. Indeed, so long as the count showed that the plaintiff was anywhere except upon the defendant's property or did not collide therewith at a point where she would be a trespasser, she is protected as against the simple negligence of the defendant without having to set up whether she was or was not rightfully upon the property of one other than the defendant. Count 3, however, avers that plaintiff was not a trespasser and was at a place where she had a right to be, and if this was a necessary averment, which was not the case, and was faulty as a mere conclusion of the pleader, the point was not taken by any ground of de-

murrer. It is true, we have a line of cases holding that a complaint charging simple negligence is demurrable unless it shows that the plaintiff was entitled to recover for simple negligence by showing that he was not a trespasser and that the defendant owed him the duty of not negligently injuring him; but those cases applied to counts which showed that the plaintiff was upon the track or premises of the defendant. So too does the case of *A. G. S. R. R. Co. v. Godfrey,* 156 Ala. 202, 47 South. 185, 130 Am. St. Rep. 76, make a distinction between the duty owing what is termed a "bare licensee" and one who is upon the defendant's premises by invitation; but that rule applies to injuries arising upon the premises of the defendant, and not upon a public place or the premises of one other than the defendant. It has been held by the New Jersey court, and we think properly so, that a plaintiff was entitled to recover for injuries resulting from the simple negligence of a telephone company unless he was a trespasser as against the company. If the plaintiff was injured upon the premises of one other than the defendant, it mattered not whether he was a licensee or a trespasser. "If he was a bare licensee, he would still be there lawfully. If a trespasser, his wrong would be to the landowner alone, not a public wrong, nor a wrong to the defendant."—*Guinn v. Delaware & A. Tel. Co.,* 72 N. J. Law, 276, 62 Atl. 412, 3 L. R. A. (N. S.) 988. Of course, the point of the injury would have considerable bearing upon the degree of care that is due the public and in determining whether or not the defendant was guilty of negligence; but it is liable for all injuries resulting from its simple negligence to persons who are not trespassers upon its property or premises. The trial court did not err in overruling the demurrers to count 3 of the complaint.

Counts 5 and 6 of the complaint are predicated upon the violation of a city ordinance requiring guard wires and whether said counts were or were not subject to demurrer matters not, for the reason that the general charge, as requested by the defendant, upon each of said counts should have been given.

As we construe said ordinance, when taken in its entirety (and which will be set out in full by the reporter; section 369, City Code), we are of the opinion that it requires the erection and maintenance of guard wires only by the last company that erects its wires. That is to say, the guard wires must be placed by the person or company making the last construction, and the undisputed evidence shows that the defendant put its wires at this place first. See testimony of witness Harris.

It was therefore the duty of the telephone company and not of the defendant to erect the guard wires under the ordinance, if the testimony of Harris is true, and which must be assumed to be true upon this appeal, as it is not contradicted. While we hold that the defendant was not liable as for a violation of the ordinance and was entitled to the general charge as to counts 5 and 6, we do not mean to hold that the fact that the ordinance requiring the telephone company to erect the guard wires would relieve this defendant from the common-law duty of erecting said guard wires or of requiring the telephone company to do so if the said guard wires would be a resonable protection to the public as against injuries liable to result from a crossing or collision of the wires.

"Where electric wires are maintained by different companies in the streets, obligations are by law imposed upon each, not only with respect to others, but also to individuals and to the public in general to prevent a contact of the wires, which may result in injury to prop-

erty or person. The question as to the duty of such companies arises most frequently where an injury has resulted from contact of a telegraph and telephone wire with an electric light or trolley wire by which the dangerous current of the latter is conveyed to the former." —Joyce on Electricity, § 449a. Says the same author in section 517a: "It is the duty of an electrical company, maintaining its wires in the streets, to prevent, so far as can be done by the exercise of reasonable care and diligence, the escape of electricity from its wires to other wires, by contact. On account of the powerful current of electricity used in furnishing light and propelling street cars, contact therewith of the wires of the telephone or telegraph company, conveying a weaker current, may not only cause injury to the apparatus of the latter companies, but is also a source of danger to their employees, and to the general public in many instances. Guard wires have been declared to be the most effectual remedy to prevent such contact of wires. And it has been said that, if guard wires will prevent contact of wires, due care requires that they be placed by an electric street railway company, before turning on its powerful current, or it may avail itself of any other reasonable precaution or practical appliance to prevent contact, known and recognized to be effective, and that omission to take such precaution would constitute negligence. In a New York case, however, it is said that in the absence of evidence that such guard wires are either necessary or usual in the construction of single trolley lines, for propelling street cars, failure to use them is not negligence. And in another case, it is held that a telephone company, maintaining a wire securely fastened above a trolley wire, will not be excused for negligence because of the failure of the trolley company to maintain guard wires in accordance with

the duty imposed upon it; but that where both companies maintain their wires, there being no guard, with a knowledge of the danger caused thereby, they are jointly liable for negligence. In a Wisconsin case it is held that it is a question of fact for the jury whether the failure of a trolley company to maintain guard wires, so as to prevent other wires from falling upon them and becoming charged with electricity, is such negligence as will render the company liable for an injury received by a passerby, who came in contact with a broken telephone wire, charged from a trolley wire. An ordinance requiring an electric railway to maintain guard wires 'whenever it shall be necessary to cross * * * telephone lines or lines of any wire used, is reasonable, since it requires that to be done which in law and good conscience ought to be done, and it is also clearly sustained, under the police power of a city. In case of failure to comply therewith, mandamus will issue in a proper case to compel compliance." It has also been held by our own court, in the case of *McKay v. So. Bell Tel. Co.,* 111 Ala. 337, 19 South. 695, 31 L. R. A. 589, 56 Am. St. Rep. 59, that a telephone company maintaining a wire securely fastened above a trolley wire will not be excused for negligence because of the failure of the trolley company to maintain guard wires in accordance with the duty imposed upon it; but that where both companies maintain their wires, there being no guard, with a knowledge of the danger caused thereby, they are jointly liable for negligence.

It may be true that count 1 of the complaint places the injury as having been inflicted while the plaintiff was on the sidewalk, and most of the proof shows that she was injured while on the church lot, but which did not belong to the defendant. The plaintiff, however, testified that she was "just in one step of the sidewalk,"

and it is at least questionable as to whether or not there was a variance, certainly not a material one, since we have laid down the rule of liability as being applicable in the same degree and to the same extent so long as plaintiff was not a trespasser against the defendant. It was liable to her for simple negligence whether she was on the sidewalk or on the lot of the Lutheran Church, and if there was a variance it was not material and did not relate to the manner or instrumentality of the injury, but to the locus in quo. There was no error in refusing charge 1 requested by the defendant. Nor was there error in refusing charge 3 requested by the defendant. As stated above, it matters not whether the plaintiff was or was not rightfully upon the lot, as it did not belong to the defendant, and its wires were not strung over said lot so as to make the plaintiff a trespasser by coming in contact with same in their proper place. Moreover, the plaintiff was rightfully on the lot as between herself and this defendant.

Count 4 charges that the defendant's agents or servants wantonly, willfully, or intentionally caused the wire aforesaid to be heavily charged with electricity, with the knowledge that the plaintiff would be probably injured thereby and with reckless disregard for consequences, etc. To constitute wantonness it must be shown that the person was conscious of his conduct and conscious from his knowledge of existing conditions that injury would likely, or probably, result from his conduct, and that with reckless indifference to consequences he consciously and intentionally did some wrongful act or omitted some known duty, which produced the injurious result.—*Montgomery R. R. v. Rice,* 144 Ala. 610, 38 South. 857; *Birmingham R., L. & P. Co. v. Brown,* 150 Ala. 327, 43 South. 342; *M. & C. R. R. v. Martin,* 117 Ala. 367, 23 South. 231; *Central of Ga. R.*

*R. v. Freeman,* 134 Ala. 354, 32 South. 778; *L. & N. R. R. v. Mitchell,* 134 Ala. 265, 32 South. 735; *Anniston Co. v. Rosen,* 159 Ala. 195, 48 South. 798, 133 Am. St. Rep. 32; *Bennett's Case,* 144 Ala. 369, 39 South. 565; *Glover's Case,* 142 Ala. 492, 38 South. 836; *Pearce's Case,* 159 Ala. 141, 49 South. 247.

There was no proof that the wire was so heavily charged as to render injury likely or probable under normal or ordinary conditions, or that the agents or servants knew of the contact of the two wires when charging the defendant's trolley wire. Indeed, the only negligence that could possibly be imputed to the defendant was in charging its wire, with a knowledge that there were no guard wires to prevent other wires from coming in contact therewith, and we think that this was at most simple negligence under all the evidence. The proof shows that the telephone wire had been recently dislodged and broken by a storm, and there is no proof that the defendant's servants knew at the time that the plaintiff was injured that the said telephone wire had fallen or was in contact with its trolley wire. It could reasonably assume that the telephone company had cleared up all of its broken or fallen wires between the storm and the time of the injury to the plaintiff, if any there were. It cannot be said to be wantonness on the part of the defendant's servants for a mere failure to have guard wires or to charge its trolley wire in the absence of guard wires, by the telephone company, as it was perhaps the telephone company's duty to have under the ordinance, in the absence of any evidence that the said telephone wires were insecure and likely to fall and that said facts were known to the servants or agents of the defendant when charging the said trolley wire. On the other hand, if the trolley wire was overcharged, the evidence shows

that it was of no harm or detriment to any one but for the falling and breaking of the telephone wire, and there was no proof that the defendant's servants knew of the contact or that the telephone wire would likely or probably fall. We think that the trial court erred in refusing defendant's requested general charge as to count 4 (charge No. 4). For the same reason the court should have given the general charge requested by the defendant as to count 2.

The trial court erred in refusing charge 20, requested by the defendant.—*So. Oil Co. v. Walker,* 164 Ala. 33, 51 South. 169; *Hale v. State,* 122 Ala. 89, 26 South. 236. This charge is not of the class which is condemned as singling out the evidence and giving undue prominence to certain parts of same. It belongs to the limited exceptional class and relates to the effect of testimony impeaching or sustaining a witness.—*Smith v. State,* 88 Ala. 73, 7 South. 52.

Nor can the refusal of said charge be justified upon the ground that it was abstract, as the jury could well find or infer that the witness made contradictory statements as to the physical condition of the plaintiff, before the alleged injury, and which was a material factor in the case.

There were several exceptions to the oral charge, but the only one insisted upon in brief of counsel is the one relating to the amount of compensatory damages. The exception does not state or set out so much of the charge as was objectionable, but merely states an exception "to that part of the charge about the damages allowed as compensatory damages." The exception should have selected and recited what the court said, and the court would have had a chance to correct or modify same, if wrong, and properly brought to his attention; but an exception merely to what the court charged upon a cer-

tain point or proposition, without setting out or repeating what the court said, is not sufficient to revise the same.—*McGehee v. State,* 178 Ala. 4, 59 South. 573. It is true, counsel attempted to find and have read to the court the objectionable features of the charge, which had been properly taken down by the stenographer and which the court declined to permit. This would have consumed but little time, and, while an expeditious dispatch of business is to be commended, thoroughness and care are essential to the administration of justice—"an ounce of preventive is better than a pound of cure."

Many of the exceptions, as to the ruling upon the evidence, relate to the condition of the church lot, how used, and whether or not the use of same was permitted. As above set forth, these inquiries are all immaterial, as the plaintiff was entitled to protection against the negligence charged whether on the lot with the consent of the church authorities or not. As we understand the situation, the wires of both companies were strung along or upon the public highway and not over or upon the lot. The telephone wire was probably blown down, broken, or sagged so as to come in contact with defendant's wire, during a storm the previous afternoon, touching the trolley wire at a point upon or along the highway; but the broken telephone wire extended beyond the sidewalk upon the edge of the church lot, the point at which plaintiff collided with same, about 10 o'clock of the morning after the storm. If the wires had been strung over the church lot, then the question of the frequency with which it was used or visited by people would probably have some bearing on the negligence vel non of the defendant in not having the wires guarded; but the place of the contact and which should have been protected by guards was upon the highway and not the lot, and the use to which the lot was put

and the conditions upon which the plaintiff and other people went there were immaterial. If the defendant was guilty of negligence, it grew out of the manner of erecting and maintaining its wire upon the highway and not across or upon the church lot, and, as above set out, it matters not whether the plaintiff and others were permitted to frequent the said church lot or not.

The plaintiff showed by other witnesses that she did her household work before the injury and did not do it afterwards, and this was done over the objection of the defendant. The court, upon the suggestion of plaintiff's counsel, limited this evidence as going to show "the extent of her injury, not for recovery." This evidence should not have been admitted, as it was but a self-serving act of the plaintiff after the alleged injury. She had the right to show that she was so injured that she could not work and the extent of her injury by her own evidence and that of other witnesses, which seems to have been done; but a perfectly sound and well person could stop work, and in fact many such persons have been known to do little or no work. Self-serving acts as well as declarations, except in very limited instances, are not admissible.—*Pope v. State,* 168 Ala. 43, 53 South. 292; 1 Greenl. on Ev. 469. Whether we would or could declare this evidence error without injury, when taken in connection with all the evidence, in order to affirm this case, we need not decide, as it must be reversed upon several other grounds. It is sufficient to suggest that the injuries of the plaintiff and the extent of same should not be shown by her self-serving action or declarations.

The judgment of the circuit court is reversed, and the cause is remanded.

Reversed and remanded. All the Justices concur.