CURTIS *v.* GRAND TRUNK RAILWAY CO. OF CANADA.

1. NEGLIGENCE — NUISANCE — CONTRIBUTORY NEGLIGENCE — INFANCY —RAILROADS.

   It was not error to submit to the jury the question of defendant's negligence in an action for personal injuries resulting from burns sustained by a boy 13 years old, who fell in a pool of hot water discharged by defendant railway company into a portion of a public street, although the plaintiff fell into the pool when he was scuffling with another boy and attempting to take from him a suit of bathing trunks.

2. SAME—HIGHWAYS AND STREETS—WATERS—DRAINS.

   A duty not to cast hot water in a public street in such a quantity as to form a pool so hot as to injure a person who might fall into it, might be held by the jury to arise from the fact that a person might sustain injury in the lawful use of the street.

3. NUISANCE—STREETS.

   The presence of a pool of hot water in a street, unguarded, would ordinarily be considered a public menace and nuisance.

4. NEGLIGENCE—MINORS—DUE CARE.

   Plaintiff should be held to the exercise of the care which

normal boys of his age usually exercise: he should apprehend consequences which his experience tells him are likely to result.

5. SAME—PROXIMATE CAUSE.

The existence of the pool of water was not a mere condition, nor the conduct of the boys the probable cause of the accident, as matter of law, so as to relieve the defendant of liability.

Error to St. Clair; Law, J. Submitted October 14, 1913. (Docket No. 39.) Decided January 5, 1914.

Case by Leo Curtis, by his next friend, against the Grand Trunk Railway Company of Canada for personal injuries. Judgment for plaintiff. Defendant brings error. Affirmed.

*Harrison Geer*, for appellant.

*Clifford W. Crandall (Burt D. Cady*, of counsel), for appellee.

OSTRANDER, J. In the city of Port Huron, Riverview street runs east and west; its eastern terminus being St. Clair river. It is 4 rods wide, opened and used to the bank of the river; but there are no sidewalks and no business places or dwellings at its easterly end. Some gravel is drawn from the river. In the street on the north side, is a public drain, made of three lines of tile 24 inches in diameter, emptying on the surface of the road some 50 feet from the water line. The drain was constructed to carry the waters of a creek known as McNeil creek, and an engineer witness called it a covered drain. At a distance of some 300 feet from the easterly end of the drain the defendant for years had discharged into the southerly crock of the drain hot water from its shops. This water and other water emptying upon the street at the end of the drain formed a small pool, and, running from the pool in a small stream, was discharged into

the river. We assume that this was not a public sewer; there being no testimony that anything but water was discharged from it, and it appearing that, when the temperature of the water permitted, boys sometimes sat in the pool which formed at the end of it. The flow of water in McNeil creek was not constant, and, accordingly, the temperature of the water in the little pool at the end of the drain was variable, being very hot when the flow from the creek was small. In the summer boys used to bathe in the river at or near the end of the street.

In the afternoon of August 25, 1909, some boys were in the street, including Leo Curtis, then 13 years old, and his brother Albert, then 8 years old, who were near the end of the drain disputing with each other the possession of some bathing trunks. Each endeavored to take the trunks from the other, and, Albert succeeding, one consequence was that Leo, who was near the pool, fell into it, and was burned in the hot water. By his next friend, he sued defendant, alleging in his declaration that it was the duty of defendant to refrain from putting anything into the street which would jeopardize the personal safety of persons lawfully using the street, and that, unmindful of duty, it discharged into the street large quantities of hot water at a point where it knew boys were in the habit of meeting and playing; that plaintiff, making lawful and proper use of the street, and exercising due care and caution, fell into the said hot water, and was injured.

The court submitted to the jury as questions of fact (1) whether it was negligent or was reasonable and prudent conduct for defendant to use as it did the system of drainage, (2) whether plaintiff was negligent, and advised them that, if the proximate cause of the injury was the controversy and scuffle indulged in by plaintiff and his brother, plaintiff could not recover. Upon the subject of plaintiff's negligence, the

jury was advised that he was not to be charged with negligence if—

"In all he did in this street, at the time in question, he was using the care and caution and conducting himself as boys of his intelligence and discretion usually and ordinarily do on like occasions, with the knowledge he conceded he had of the character of the water that usually ran out of the crock drainage pipe at the place where he received his injury."

The jury returned a substantial verdict for plaintiff, upon which judgment was entered March 19, 1913. In this court, defendant contends that it was error to refuse a peremptory instruction to the jury in its favor for the reason that upon the undisputed evidence the proximate cause of the injury was the scuffle, and the hot water was, at most, a condition, and the remote cause of the injury; that plaintiff was himself guilty of contributory negligence; that the discharge of the water into the drain was not an act of negligence. In this order, these contentions are discussed in the brief.

The facts are not much in dispute. Plaintiff had observed, during the month of August, that nothing but hot water was running in the drain—he used to put his hands in the water to see how hot it was. He was not playing in the pool when he was injured, nor making use of the street except to physically contest with his brother the possession of the bathing trunks. He testified:

"*Q.* And you fell in there because you lost your balance when Sam pulled the trunks out of your hands?

"*A.* Yes, sir.

"*Q.* And that is what caused you to be injured was the fact that Sam pulled the trunks out of your hands, and you lost your balance?

"*A.* Yes, sir."

And, further:

178 MICH.—25.

"Albert (Sam) and I had been scuffling for about five or ten minutes. No blows had passed. We would sometimes have a little quarrel before this. We never before fought for five or ten minutes without one striking the other. We were not fighting on the day in question. I was angry at him for trying to keep the tights when I wanted them, and I was trying to take them from him. I was three or four inches the taller at that time. I had been attempting for five or ten minutes to take the tights from him; he had them, and I did not get hold of them in that five minutes. He had hold of them, and I had hold of him; but I could not get hold of the tights. I did finally get hold of them, and when I did so we pulled steady, and then he gave a jerk, and jerked them out of my hands. I was pulling towards the south; I was on a little lower ground that he was. I had that bank for a purchase, and I was leaning back and pulling. He gave a quick jerk and pulled the tights out of my hands. They were wet and kind of slippery. When he pulled them out of my hands, I lost my balance and fell backward into the water."

From the shops of defendant the view of the street at the end of the drain was not interrupted, and it may be assumed that defendant was chargeable with knowledge that the street at or near the end of the drain was frequented by boys as herein described. It is assumed, too, upon this record, that the city had knowledge that defendant made such use of the sewer and street as it did make.

If defendant was not negligent, other questions need not be considered. It cannot be said, as matter of law, that it owed no duty to the public to refrain from casting the hot water upon the street, by means of the drain or otherwise, when the volume of the water discharged, the constancy of the flow, and that it formed a pool of hot water in the street, are considered. Such a duty might arise from the fact that it was reasonably to be apprehended that some one lawfully in the street would thereby be injured. Ordinarily the presence of a pool of hot water in a

street, unguarded, would be considered a public menace and nuisance.

The serious question is whether the undisputed facts preclude plaintiff from insisting that his injury is in law the result of defendant's want of care. If his own negligence contributed to the result, he, of course, cannot recover. Whether he was negligent is not to be determined by the result alone. It goes without saying that, if a boy leaning backward over or near the margin of a pool of water is unable to recover his equilibrium, he may fall in the water. Whether, in a given case, a boy should apprehend such a consequence—*i. e.*, that he will not be able to recover balance before falling—may, and in this case must, depend upon a number of circumstances. He should exercise the care which normal boys of his age generally do exercise. He should apprehend consequences which his experience has told him are likely to result. We are impressed that whether plaintiff was himself free from negligence was a question of fact.

It is said that the pool of hot water in the street was a mere condition, not the cause, at least not the proximate cause, of the injury; that the proximate cause of the injury was the peculiar conduct of the lads. Plaintiff was not intentionally pushed into the water by his brother. What happened was not intended by either of them. Plaintiff was not trying to use that portion of the street in which the pool of water was; he did not walk into it, was not deceived about the temperature of the water, and, if he had deliberately gone into the water, could not have held defendant responsible for his injuries. But, if one uses a street in which there is a dangerous nuisance, with knowledge of the nuisance, and with reasonable regard and care for his own safety, notwithstanding the nuisance, it cannot be said that, if he nevertheless falls into it, and is injured, his conduct, and not

the condition of the street, is the proximate cause of the injury. The controlling question is the one of plaintiff's care for his own safety in view of conditions known to him. That question, as we have said, was for the jury under proper instructions. Upon this subject, the instructions given are not criticised.

The judgment is affirmed.

McALVAY, C. J., and BROOKE, KUHN, STONE, BIRD, MOORE, and STEERE, JJ., concurred.