LAMB v. CONSUMERS POWER CO.

1. ELECTRICITY—HIGH VOLTAGE—HIGH DEGREE OF CARE TO PROTECT LIFE.

The handling of electrical currents of high voltage is a business extremely hazardous, and those engaged in that business are charged with the duty of exercising a very high degree of care for the protection of life.

2. NEGLIGENCE—FORESEEABLE CONSEQUENCES.

In an action for personal injuries alleged to be the result of defendant's negligence, in order that the plaintiff may recover it must appear that his injury was the natural and probable consequence of a negligent act or omission of the defendant which, under the circumstances, an ordinarily prudent person ought reasonably to have foreseen or anticipated might possibly occur as a result of such act or omission.

3. SAME—SPECIFIC DETAIL OF MANNER OF INJURY NEED NOT BE FORESEEN.

It is not necessary that the manner in which a person might suffer injury should be foreseen or anticipated in specific detail in order to render one liable for negligence.

4. DEATH—HIGH VOLTAGE ELECTRIC WIRES—NEGLIGENCE—QUESTION FOR JURY.

Whether an ordinarily prudent person, installing or maintaining uninsulated high voltage wires a foot or two directly over the highest branches of a walnut tree about 17 feet high should not have foreseen or anticipated that contact with such wires would probably result *held,* a question for jury in action under survival act for death of 13-year old boy from electrocution (3 Comp. Laws 1929, § 14040).

5. NEGLIGENCE—DEGREE OF CARE REQUIRED OF BOYS.

The degree of care required of a 13-year old boy is the care which normal boys of his age generally do exercise and he should apprehend consequences which his experience has told him are likely to result.

6. SAME—CONTRIBUTORY NEGLIGENCE—BOYS.

The fact that a boy may not have as mature judgment as an adult will not excuse him from exercising the judgment and discretion which he possesses, or from heedlessly rushing into known dangers and where the dangers are known and understood by him the rule of contributory negligence is fully applicable.

7. ELECTRICITY—POWER LINES—TREES—CHILDREN.

Where electrical power lines are extended by, near, or through a tree, especially a fruit or nut tree, a high degree of care is required as children have an aptitude to climb such trees and the owner of the lines is bound to anticipate that persons may lawfully climb such trees and come into contact with wires.

8. Same—Boys—Contributory Negligence—Question for Jury.
     Whether or not 13-year old boy, claimed by his parents to be above the average in intelligence, who had been warned of the danger of coming in contact with the high voltage wire of defendant's power lines but who was not shown to have known that current could be transmitted through the branches or leaves of the tree was guilty of contributory negligence in climbing walnut tree 17 feet high with power lines a foot or so above highest branches, after a rain had fallen *held,* a question for jury in action under survival act, as different opinions exist as to whether a boy of his age and experience should have had this knowledge (3 Comp. Laws 1929, § 14040).

9. Trial—Question for Jury—Evidence.
     If there is any evidence from which the jury might justifiedly find the existence of a fact in issue, the issue should be submitted to them for determination.

10. Electricity—Negligence—Evidence—Question for Jury.
     In action under survival act for electrocution of 13-year old boy who had climbed a walnut tree beneath defendant's power lines on an October morning while in company with another boy, whether or not defendant was guilty of negligence *held,* a question of fact where it was charged with knowledge that plaintiff and family lived upon the land where the tree was growing; that children are fond of climbing trees, especially those which bear nuts; that the wires were not insulated; and that the tree was not sufficiently trimmed so that in shaking the limbs it was possible to contact the live wires (3 Comp. Laws 1929, § 14040).

Appeal from Mecosta; Pugsley (Earl C.), J. Submitted June 7, 1938. (Docket No. 1, Calendar No. 40,014.) Decided October 7, 1938.

Case by Earl A. Lamb, administrator of estate of Robert Lee Lamb, deceased, against Consumers Power Company, a corporation, for damages caused when deceased was electrocuted. Verdict and judgment for plaintiff. Remittitur filed by plaintiff. Defendant appeals. Affirmed.

*Harry D. Reber,* for plaintiff.

*Worcester & Worcester* and *Arthur Paul,* for defendant.

SHARPE, J.  This is an action under the survival act, 3 Comp. Laws 1929, § 14040 (Stat. Ann. § 27.684), to recover damages for the death of Robert Lee Lamb caused by coming in contact with a high tension wire owned and maintained by defendant company.  The defendant company, a corporation, is engaged in generating and transmitting electricity.  It maintains an electric power line in Wheatland township, Mecosta county, Michigan.  The line was constructed to carry 6,600 volts, but later improved to carry 11,000 volts.

Plaintiff, Earl A. Lamb, as administrator of the estate of Robert Lee Lamb, deceased, was the owner of an 80-acre farm located on the east side of the highway adjacent to the above mentioned power line.  He had lived there nearly two years prior to October 6, 1936.  The fence on the west side of the farm encroached three feet on the highway.  Two feet east of the fence there was growing a row of walnut trees.  The walnut tree hereinafter mentioned was approximately 17 feet high, and the wires of the power line extended directly over it and from a foot to two feet higher than its highest branches.

Robert Lee Lamb, decedent, was past 13 years of age, a husky lad, large for his age and about five feet tall.  He was a bright boy, well advanced in school and claimed by his parents to be above the average in intelligence.  He knew that the wires passing above the trees carried electricity and had been warned of the danger of coming in contact with them.  On the morning of October 6, 1936, plaintiff's decedent, together with another boy eight years old,

went to gather walnuts. It had rained in the morning. Deceased climbed into the walnut tree and stood on a limb approximately 14½ feet from the ground and about five feet seven inches from the wires. While in the tree, he received an electric shock, fell on a lower limb, and later fell to the ground in an unconscious state. He died soon thereafter. An examination of the body disclosed electric burns on the back of both legs, between the knees and hips, and one burn on the right forearm. The record also shows that there were three burned spots on the tree which were located a distance of approximately 14 feet from the ground.

The cause came on for trial and at the close of plaintiff's proofs, defendant made a motion for a directed verdict on the ground that no negligence was shown on part of defendant. This motion was renewed at the close of all proof and included the ground that plaintiff's decedent was guilty of contributory negligence. This motion was denied by the trial judge and the cause was submitted to a jury which brought in a verdict for plaintiff in the sum of $11,209. Subsequently, defendant made a motion for judgment *non obstante veredicto* which was denied. The motion for a new trial was denied on condition that plaintiff consent to a reduction in the amount of the verdict down to $5,000. Plaintiff complied with the above order.

Defendant appeals and contends that the power line was adequate to carry an electric current of 11,000 volts; that it was built and maintained in accordance with the rules of the Michigan public utilities commission and in accordance with the common course and usage in the electrical profession; that on the day in question, in order for electricity to escape from the wires to contact some object, the

object would have to be brought to within one inch of one of the wires; that the line was patrolled each week; that there was no competent evidence to submit to the jury that defendant company was negligent; and that it affirmatively appears that plaintiff's decedent was guilty of contributory negligence.

In our discussion of this case we have in mind that contact with an electric power line is dangerous to one's health and safety; that the contact may be direct or indirect through extraneous instrumentalities; that plaintiff's decedent had a right to the use of the highway adjacent to his father's farm; and that his right included the climbing of the walnut tree.

The degree of care imposed upon those maintaining electrical power lines is well stated in *Huber* v. *Twin City General Electric Co.,* 168 Mich. 531, 535, where we said:

"The handling of electrical currents of high voltage is a business extremely hazardous, and those engaged in that business are charged with the duty of exercising a very high degree of care for the protection of life."

See, also, *Warren* v. *Railway Co.,* 141 Mich. 298 (19 Am. Neg. Rep. 21); *Swaczyk* v. *Detroit Edison Co.,* 207 Mich. 494.

The test to be applied is found in *Clumfoot* v. *St. Clair Tunnel Co.,* 221 Mich. 113, 116, where we said:

"Defendant's counsel contend that in view of the location of the wires, beyond the reach of a man standing on the ground, no such duty devolved on it. The test to be applied is, Was there a likelihood or reasonable probability of human contact with the wires by persons who had a right to be in a place

from which such contact was possible? If so, the danger should have been foreseen or anticipated by the defendant. 20 C. J. pp. 354, 355; *Brown* v. *Edison Electric Illuminating Co. of Baltimore City* (90 Md. 400 [45 Atl. 182, 46 L. R. A. 745, 78 Am. St. Rep. 442]). It is not necessary that the manner in which a person might suffer injury should be foreseen or anticipated in specific detail. The side track was constructed for the purpose of receiving and discharging cars. It had been used on many occasions for the transfer of express from car to car. There was nothing to warn train crews placing such cars of the danger of leaving them near one of the piers. The wire was in a position where it could be touched by the hand of a man standing in the open doorway in the side of a car. Of these facts the defendant had, or was chargeable with, notice. The care to be observed by it must be in proportion to the danger involved and extends to every place where persons have a right to be, whether for business, convenience or pleasure. In our opinion it was for the jury to say whether an ordinarily prudent person, installing or maintaining such high voltage wires so close to the track where men were engaged in the work being performed by plaintiff, should not have foreseen or anticipated that contact with such wires would probably result. See *Jaworski* v. *Detroit Edison Co.*, 210 Mich. 317, and cases cited, and *Ignaszak* v. *McCray Refrigerator Co.*, 221 Mich. 10, where many authorities are cited and quoted from."

In *Teachout* v. *Railway Co.*, 179 Mich. 388, the defendant company caused uninsulated wires carrying a heavy voltage to be strung 15 to 18 inches above the wires of a telephone company and passing diagonally over the latter. Plaintiff's intestate was employed by the telephone company as a lineman and in making some necessary repairs at the top of a pole came in contact with the defendant's high tension wires

and was killed.  In affirming a judgment for plaintiff, we said:

"This court will not say a jury is not justified in finding that to string such tension wires so close to telephone wires as was done here was negligence."

In determining whether plaintiff's decedent was guilty of contributory negligence the facts show that decedent was a normal healthy boy; that the tree was near the line fence of his father's farm; that it was easy to climb; and that it was the time of year when farmer boys usually gather nuts.

The degree of care required by boys is well stated in *Curtis* v. *Railway Co.,* 178 Mich. 382, where we said:

"He should exercise the care which normal boys of his age generally do exercise.  He should apprehend consequences which his experience has told him are likely to result."

In *Mollica* v. *Railroad Co.,* 170 Mich. 96, 101 (L. R. A. 1917F, 118), we said:

"In case of a child of the age of deceased, the law is well settled in this State that he is responsible for the exercise of such care and vigilance as may reasonably be expected of one of his age and capacity; and the want of that degree of care is negligence.  The fact that he may not have as mature judgment as an adult will not excuse him from exercising the judgment and discretion which he possesses, or from heedlessly rushing into known dangers.  Where the dangers are known and understood by him, the rule of contributory negligence is fully applicable."

Where electrical power lines are extended by, near, or through a tree, a high degree of care is required as children have an aptitude to climb trees.

In Curtis on Electricity, p. 772, § 512, it is said:

"An electric company, maintaining a dangerous wire through or near a tree is bound to anticipate that persons may lawfully climb the tree, and it is required to exercise due care to prevent injury to such persons from its wire. The maintenance of wires through a tree requires frequent inspection, for the company is charged with knowledge that the swaying of the limbs is likely to abrade the insulation and permit the dangerous current to escape."

And in 14 A. L. R. 1032, the rule is there stated to be:

"Children are peculiarly liable to injury by defectively insulated transmission wires. Because of their love of adventure and their lack of a sense of danger, they are apt to climb into danger even if the transmission wires are some distance from the ground, and the courts have held the owner of such wires to a high degree of care to see that the wires are not left uninsulated in places where children are likely to be injured by them."

In *Chickering* v. *Lincoln County Power Co.*, 118 Me. 414 (108 Atl. 460), where uninsulated wires were strung along a highway through branches of trees growing on adjoining property, and the power company was held liable for the death of a child of the owner of such adjoining property, who in play climbed into the tree, came in contact with a wire, and was killed, the court said:

"In constructing and maintaining a line for transmitting the subtle agency of electricity, no one may with impunity totally disregard the natural habits and childish inclinations of boys at play to climb the door yard shade-trees. Human life is short enough, and its burdens and responsibilities come soon enough, at best. To take from boyhood the legitimate pleasures and adventures of tree climbing, would unduly restrict the confines of that mem-

ory-cherished domain, and lessen life's joys both there and thereafter.''

See, also, *Dwight Manfg. Co.* v. *Word,* 200 Ala. 221 (75 South. 979); *Temple* v. *McComb City Electric Light & Power Co.,* 89 Miss. 1 (42 South. 874, 11 L. R. A. [N. S.] 449, 119 Am. St. Rep. 698, 10 Ann. Cas. 924).

In *Godfrey* v. *Kansas City Light & Power Co.,* 299 Mo. 472 (253 S. W. 233), a boy of 12 years of age while in a walnut tree gathering walnuts came in contact with an uninsulated wire of defendant company which ran through the tree. In affirming a judgment for plaintiff, the court said:

''It is also well established law, that electric companies must take notice of the natural instinct of boys to climb trees—especially trees which bear nuts or fruit—and if they string wires through such trees under circumstances which may reasonably charge them with notice of the probability of boys climbing such trees, and a boy who has climbed a tree to get the nuts or fruit—or even to satisfy his childish instinct to climb trees—is injured by an uninsulated or dangerous wire, without contributory negligence, the company must respond in damages.''

See, also, *Benton* v. *North Carolina Public-Service Corp.,* 165 N. C. 354 (81 S. E. 448).

In *Erikson* v. *Wisconsin Hydro-Electric Co.,* 214 Wis. 614 (254 N. W. 106), defendant maintained a three-wire transmission line along the road in front of plaintiff's house. The nearest wire passed between two feet four inches and two feet eight inches from the trunk of a tree. The limbs of the tree were trimmed in the immediate vicinity of the wire. Plaintiff's son, aged 11 years, came in contact with the wire while climbing the tree and was electrocuted. The court said:

"The first question is whether the evidence sustains the jury's conclusion that defendant was negligent. Defendant contends that this was a rural line and that insulation was impractical; that the tree was trimmed on the side nearest the wire so that it would be difficult for a person to climb up on that side of the tree; that the tree was so trimmed that a person climbing the tree would naturally climb on the opposite side of the tree and away from the wire; that the wire was 20 feet from the ground; that the tree was high; and that there was no practical means of giving other protection. The contentions cannot be sustained. Ordinarily the extent to which wires conveying deadly electric currents should be insulated or otherwise guarded is a jury question. * * * It is a jury question in this case whether it should not have been foreseen that a tree of this sort, with many low-hanging branches, readily climbed by youngsters, would attract a child to climb into a position of peril."

Defendant company relies upon the following authorities for the purpose of showing that plaintiff's decedent was guilty of contributory negligence as a matter of law: *Morris* v. *Jefferson Electric Co.*, 278 Pa. 361 (123 Atl. 321); *Minter* v. *San Diego Consolidated Gas & Electric Co.*, 180 Cal. 723 (182 Pac. 749); *Graves* v. *Washington Water Power Co.*, 44 Wash. 675 (87 Pac. 956, 11 L. R. A. [N. S.] 452); *Freeman* v. *Railroad Co.*, 54 App. Div. 596 (66 N. Y. Supp. 1052); *Fuscia* v. *Central Light & Power Co.*, 2 La. App. 195; *Stark* v. *Muskegon Traction & Lighting Co.*, 141 Mich. 575 (1 L. R. A. [N. S.] 822); *Brown* v. *Panola Light & Power Co.*, 137 Ga. 352 (73 S. E. 580).

In the *Stark Case, supra,* the court denied recovery because the injured boy was a trespasser or a "wrong-doer." In the case at bar, plaintiff's decedent had a right to be in the tree for the purpose

of getting walnuts. The other cases cited by defendant can readily be distinguished from the facts in the case at bar.

In the case at bar, plaintiff's decedent had been warned of the danger of coming in contact with the electrical wire, but the record fails to show that the boy had knowledge that the current could be transmitted through the branches or leaves of the tree. Whether a boy of his age and experience should have this knowledge is a question upon which different opinions exist.

In *Frary* v. *Grand Rapids Taxicab Co.*, 227 Mich. 445, we said:

"In cases of this character it should be made very plain by the proofs that the conduct of the plaintiff was negligent before his conduct is declared to be negligent as a matter of law."

In *Eastman* v. *Metropolitan Life Ins. Co.*, 228 Mich. 125, 128, we said:

"It was a question about which reasonable minds might differ, or might draw different inferences. Such questions are questions of fact for the jury.

"It has been held that if there is any evidence from which the jury might justifiably find the existence of a fact in issue, the issue should be submitted to them for determination. Accordingly, if the evidence is conflicting, the issue is for the jury to determine. Nor can the court declare a fact established as a matter of law where the evidence is such that reasonable men might come to different conclusions as to the existence of the fact."

In our opinion the negligence of the defendant company also presents a question of fact. It is charged with knowledge that plaintiff and family lived upon the land where the tree was growing; that children are fond of climbing trees and espe-

cially those trees that bear nuts; that its wires were not insulated as they passed over the trees; that the tree was not sufficiently trimmed, so that in shaking the limbs it was possible to contact the live wires; and whether the defendant company used the proper degree of care was for the jury to decide.

The judgment of the trial court is affirmed. Plaintiff may recover costs.

WIEST, C. J., and BUSHNELL, POTTER, CHANDLER, NORTH, and McALLISTER, JJ., concurred. BUTZEL, J., did not sit.