152 So.2d 670

**Braxton B. BLACKWELL**

v.

**ALABAMA POWER COMPANY.**

I Div. 885.

Supreme Court of Alabama.

April 4, 1963.

Rehearing Denied May 9, 1963.

Inge, Twitty & Duffy, Thos. E. Twitty, Mobile, and Martin, Vogtle, Balch & Bingham, Harold Bowron, Jr., Birmingham, for appellee.

Hand, Arendall, Bedsole, Greaves & Johnston, Mobile, for appellant.

COLEMAN, Justice.

This is an appeal by plaintiff from judgment for defendant in action for wrongful death of plaintiff's twelve-year-old son, hereinafter sometimes referred to as the intestate, who was allegedly killed as the proximate result of the negligence of defendant in maintaining its electric wires through a tree which the boy was climbing when he met his death.

At defendant's request, the court gave the following written charge:

"1. (a) The Court charges the jury that under the evidence in this case your verdict must be for the defendant."

On this appeal, plaintiff insists that the court erred in giving said charge. Plaintiff argues that every essential averment of one or more counts of the complaint was sustained by the evidence.

Defendant contends that the peremptory instruction in its favor was given without error for two reasons: first, because the complaint fails to state a cause of action, and, therefore, is insufficient to support a judgment; second, because even if the complaint be sufficient to support a judgment, the evidence was insufficient to sustain any count of the complaint.

As we understand it, defendant contends that the complaint was defective in failing to allege facts sufficient to show that defendant was under a duty to exercise reasonable care in maintaining its wires so as to guard against injury to one climbing the tree. Defendant says the allegations are insufficient to show that defendant was under a duty to exercise such care because the allegations failed to show that defendant should reasonably have anticipated that a boy would climb the tree.

If the averments of the complaint fail to show a duty on defendant to anticipate that someone lawfully pursuing business or pleasure might come into contact with defendant's wires which ran through the tree, then, we agree, the complaint would fail to state a cause of action.

The complaint was amended many times. Our understanding is that issue was joined and evidence taken on an amended complaint which contained twelve counts. In some of these counts, plaintiff alleges that his son was killed as the proximate result of defendant's negligence; in others, as a result of the "wantonness of the defendant."

Ten of the amended counts, perhaps all of them, contain the following averments:

"3. Plaintiff further avers that, for a long period of time next preceding said accident, said Price Morris Road was very frequently used by children and by others; that numbeous (sic) children passed within a few feet of said tree while using said Price Morris Road in going to and from school, and for various other purposes; that, during the school term, a school bus picked up and discharged school children at the nearby intersection of Price Morris and Moffat Road; and that said tree was very close to one or more residences in which school children lived and was at a place where children would be likely to climb it and to come into contact with said wire or wires and be killed or injured, and that defendant, by and through its duly authorized agents, servants or employees acting within the line and scope of their agency, service or employment as such, knew, or, in the exercise of due care, should have known that children would be likely to climb said tree and come into contact with said wire or wires and thereby be killed or injured."

The sufficiency of the amended complaint against demurrer is not before us on this appeal, because the counts of the amended complaint charging negligence

were upheld and there is no cross-assignment. Sims v. Tigrett, 229 Ala. 486, 158 So. 326.

This court has said:

"When a complaint states a cause of action, but omits some matter which should have been stated pursuant to good pleading, and a demurrer is improperly overruled, plaintiff is entitled to a judgment notwithstanding such omitted averment, if his cause of action is proven, and sometimes such proof will cure the defect of pleading. (Citation Omitted.) And defendant's method of review is by assigning as error the ruling on demurrer, not the rendition of judgment for plaintiff, nor a request for the affirmative charge.

"But if the complaint fails to state a cause of action, as distinguished from a defect in pleading one, it will not support a judgment, and defendant may at any time, before or after judgment, or on appeal, show that such is the situation and cause the judgment, if then rendered, to be set aside or reversed. But not so if it states a cause of action, (Citations Omitted.), * * * unless a demurrer was improperly overruled, and that ruling is assigned as error." John E. Ballenger Const. Co. v. Joe F. Walters Const. Co., 236 Ala. 548, 550, 184 So. 275.

■ On demurrer, all intendments are against the sufficiency of the complaint, but when the inquiry arises upon the sufficiency of the complaint to sustain the judgment, all reasonable intendments are indulged to support the judgment. Werten v. K. B. Koosa & Co., 169 Ala. 258, 53 So. 98; Klepac v. Fendley, 222 Ala. 417, 132 So. 619.

This court has said:

" * * * ' "The duty of an electric company, in conveying a current of high potential, to exercise commensurate care under the circumstances, requires it to insulate its wires, and to use reasonable care to keep the same insulated, wherever it may reasonably be anticipated that persons, pursuing business or pleasure, may come in contact therewith. This statement of the rule implies that, in the absence of statute or municipal ordinance, it is not necessary to insulate wires which are so placed that no one could reasonably be expected to come in proximity to them." Curtis on Law of Electricity, § 510.' [Dwight Mfg. Co. v. Word, 200 Ala. 221, 75 So. 979], 200 Ala. 224, 75 So. 979, 982." Alabama Power Co. v. Cooper, 229 Ala. 318, 320, 156 So. 854.

■ We are of opinion that the amended complaint, when measured by the foregoing rules, contains allegations sufficient to show that defendant was bound reasonably to anticipate that boys would climb the tree, and, therefore, under a duty to exercise reasonable care commensurate with the circumstances to guard against injury to persons, pursuing business or pleasure, who were likely to come into contact with defendant's wires.

As a result, we hold that the peremptory instruction to find for defendant was not justified on the ground that the complaint failed to state a cause of action.

It has been stated that an electric company maintaining a dangerous wire through or near a tree is bound to anticipate that persons may lawfully climb the tree, to exercise due care to prevent injury to such persons from its wire, and to keep such wires insulated in places where children climbing the tree will come into contract with the wire. Curtis on Law of Electricity, § 512. The statement is supported by decisions of this court and other courts.

In affirming judgment for plaintiff, the Mississippi court said:

" * * * The immemorial habit of small boys to climb little oak trees filled with abundant branches reaching almost to the ground is a habit which corporations stretching their wires over such trees must take notice of. * * " Temple v. McComb City Electric Light

& Power Co., 89 Miss. 1, 42 So. 874, 875, 11 L.R.A.,N.S., 449.

The Pennsylvania court said:

" ' * * * "The company, however, which uses such a dangerous agent (a wire charged with an electric current), is bound not only to know the extent of the danger, but to use the very highest degree of care practicable to avoid injury to every one who may be lawfully in proximity to its wires and liable to come accidentally or otherwise in contact with them." In this carefully chosen language, quoted and adopted in Daltry v. Media Electric Light, etc., Co., 208 Pa. 403, 57 A. 833, our highest judicial tribunal has plainly defined the measure of the defendant's obligation and described the class to every member of which the law extends the protection that would be secured by the faithful discharge of that obligation. Why was not the plaintiff in that class? Upon what theory can the defendant successfully contend that he was not "lawfully in proximity to its wires"? Upon what principle of law or reason may it rest the claim that this boy was bound to repress the natural and wholly innocent impulse to climb up among the shady branches of the tree on a summer afternoon, to the end that it should be relieved of its obligation to remove or repair its dangerous wire? We can discover none.' " Mullen v. Wilkes-Barre Gas & Electric Co., 229 Pa. 54, 77 A. 1108, 1109.

In an action for wrongful death of a twelve-year-old boy, killed by contact with an electric wire while he was climbing a tree, the North Carolina Court affirmed the judgment for plaintiff and approved the rule stated above. Benton v. North Carolina Public Service Co., 165 N.C. 354, 81 S.E. 448.

The Missouri Court approved the following statement:

" 'Several cases are cited by plaintiff, and we think that such declare the

law correctly, that electric companies stringing high-power wires along streets and alleys through or in close proximity to trees of such character and location that boys, following their natural adventuresome tendency, are apt to climb same, must use the high care imposed on them to keep such wires in a safe condition. The high degree of care required of persons handling so dangerous an agency as electricity applies, we think, to the question of anticipating that children, and especially boys, are likely to indulge in the sport of climbing trees and going into somewhat dangerous and unusual places. * * * ' " Thompson v. City of Slater, 197 Mo.App. 247, 193 S.W. 971, 974.

See also: Williams v. Springfield Gas & Electric Co., 274 Mo. 1, 202 S.W. 1; Godfrey v. Kansas City Light & Power Co., 299 Mo. 472, 253 S.W. 233.

To like effect, the Maine Court said:

" * * * Intestate, while at play, climbed into the tree, and, as the immediate result of contact there with a naked wire, was instantly killed by an electric shock. Trees growing about a family home are not primarily for boys to play in. But by climbing a tree a boy would not altogether remove himself from the pale of the protection of the law. In constructing and maintaining a line for transmitting the subtle agency of electricity, no one may with impunity totally disregard the natural habits and the childish inclinations of boys at play to climb the dooryard shade trees. * * * " Chickering v. Lincoln County Power Co., 118 Me. 414, 108 A. 460, 462.

The Wisconsin Court said:

"The first question is whether the evidence sustains the jury's conclusion that defendant was negligent. Defendant contends that this was a rural line and that insulation was impractical;

that the tree was trimmed on the side nearest the wire so that it would be difficult for a person to climb up on that side of the tree; that the tree was so trimmed that a person climbing the tree would naturally climb on the opposite side of the tree and away from the wire; that the wire was twenty feet from the ground; that the tree was high; and that there was no practical means of giving other protection. The contentions cannot be sustained. Ordinarily the extent to which wires conveying deadly electric currents should be insulated or otherwise guarded is a jury question. (Citations Omitted.) It is a jury question in this case whether it should not have been foreseen that a tree of this sort, with many low-hanging branches, readily climbed by youngsters, would attract a child to climb into a position of peril. * * *" Erikson v. Wisconsin Hydro Electric Co., 214 Wis. 614, 254 N.W. 106, 107.

The Texas Court said:

" * * * It is a matter of common knowledge that it is the natural inclination and venturesome disposition of children, and especially boys, to climb trees and to play among the limbs, and we think it is well settled that a company, stretching electric wires in a city or town through and among the limbs of trees like the evidence shows the tree in this case to have been situated as it was, must take notice of boyish inclinations and impulses to climb, and anticipate the probability of the presence of children in such trees and the possibility of their coming in contact with the wires and suffering injury thereby. (Citations Omitted.) Multiplied cases supporting the principle announced could be cited." Texas General Utilities Co. v. Nixon, (Tex.Civ. App.), 81 S.W.2d 250, 253.

The Michigan Court said:

"In our opinion the negligence of the defendant company also presents a question of fact. It is charged with knowledge that plaintiff and family lived upon the land where the tree was growing; that children are fond of climbing trees and especially those trees that bear nuts; that its wires were not insulated as they passed over the trees; that the tree was not sufficiently trimmed, so that in shaking the limbs it was possible to contact the live wires; and whether the defendant company used the proper degree of care was for the jury to decide." Lamb v. Consumers Power Co., 286 Mich. 228, 281 N.W. 632, 636.

In every case cited to us by appellant or appellee, in which a boy climbing a tree was injured by contact with a wire carrying electricity, the court held in accord with the above cited cases. In an Alabama case involving injury from contact with electric wire by a person climbing a tree, there an adult, this court said:

"We approve as sound the following rules of law, which are well settled by the most authoritative decisions in this country:

"1. 'The duty of an electric company in conveying a current of high potential, to exercise commensurate care under the circumstances, requires it to insulate its wires, and to use reasonable care to keep the same insulated, wherever it may reasonably be anticipated that persons, pursuing business or pleasure, may come in contact therewith. * * *' Curtis on Law of Electricity, § 510.

* * * * * *

"5. 'An electric company, maintaining a dangerous wire through or near a tree, is bound to anticipate that persons may lawfully climb the tree, and it is bound to exercise due care to prevent injuries to such persons from its wires.' Id. § 512

"6. 'The maintenance of a wire through a tree requires frequent inspection, for the company is charged

with knowledge that the swaying of the limbs is likely to abrade the insulation and permit the dangerous current to escape.' Id.

"(These last two propositions are, of course, to be qualified by the nearness or remoteness of the tree with respect to human beings, and their natural and probable associations therewith.)" Dwight Mfg. Co. v. Word, 200 Ala. 221, 224, 75 So. 979.

In Woodward Iron Co. v. Burges, 219 Ala. 136, 121 So. 399, this court, conditioned on remittitur, affirmed judgment for a boy who was injured by contact with defendant's power line while the boy was climbing a tree.

So it must be regarded as settled that one who maintains a dangerous wire carrying electricity through or near a tree, must anticipate that persons may climb the tree, unless the circumstances are such that the remoteness of the tree, or perhaps some other reason, makes it improbable that a person will climb the tree.

This decision, then, must turn on whether there was, or was not, a scintilla of evidence to support the inference that a boy might reasonably have been expected to climb the tree here involved.

In reviewing the giving of affirmative instructions for defendant, we must view the evidence in the light most favorable to plaintiff, and we must allow all inferences favorable to plaintiff which the evidence, or a scintilla thereof, supports. Bradford v. Moore Bros. Feed & Grocery, 268 Ala. 217, 105 So.2d 825; McMillan v. Aiken, 205 Ala. 35, 88 So. 135; cases cited in Ala. Digest, Appeal & Error, ☞ 927(7). If, from the evidence, reasonable inference may be drawn substantiating the claimed culpability of defendant, a directed verdict for defendant is improper. Sullivan v. Alabama Power Company, 246 Ala. 262, 267, 20 So.2d 224.

Intestate was a boy over the age of twelve at the time of his death on a dry Sunday afternoon in July. He had gone with his parents and other relatives to the place of Mr. and Mrs. Griffice in Mobile County. The Griffice place was located in what defendant's District Manager or Superintendent referred to as the "Price Morris Road Community." The Griffices were offering Azaleas for sale to purchasers who would themselves dig up the plants in a sort of field near the Griffice house. The field lay in the northwest corner of the intersection of Moffat Road and Price Morris Road, that is, the field was bounded on the south by Moffat Road and on the east by Price Morris Road. The field was enclosed by a fence on the sides next to these roads.

On the afternoon in question, intestate rode with his parents in a truck to a point in the field about 150 or 200 feet from the tree here in question. The intestate and relatives disembarked from their vehicles and began to dig Azaleas, all with the consent of the Griffices. There were present other vehicles and other people, similarly engaged and children. Intestate dug Azaleas for a while. He was called by other boys to the tree and climbed it to catch a little squirrel. He met his death in the tree.

The tree was located alongside Price Morris Road about 115 feet north of the north boundary of Moffat Road and about 5 feet west of the west boundary of Price Morris Road. The fence on the east side of the field was of net or hog wire, about 5 feet high, and was nailed to the tree. There were barbed wire strands running across the net wire and they were mounted on posts. The tree was used for a post also. The tree was 5 feet and a few inches west of the east property line of the field. There was nothing but empty space between tree and road. Price Morris Road appears to have had a gravel or, perhaps, an asphalt surface, and was about 19 feet wide. The field and the road seem to be on the same level. The terrain appears to be flat.

One witness described the tree as follows:

"A. The trunk of the tree was one foot and two inches in diameter and it

was a water oak tree, or live oak, and the tree itself was approximately 25 to 30 feet tall, or a little better.

\* \* \* \* \* \*

"A. It had wide swinging branches, tall branches, and the wires were running right through the tree, and there were low branches reaching down near the fence. The regular wire fence was nailed to the tree."

The witness described intestate's dying as follows:

"A. \* \* \* One of the boys told me right quick like, says 'Uncle Bruce, Douglas has fainted', and in my mind I said 'I've got to get to that boy before he falls out and hurts himself bad'.

"Q. What did you do?

"A. So I immediately made a break, I was only about 20 feet from the tree at that time, made a break for the tree and went up the tree, started up the tree just as fast as I could go and I got about I'd say half way up the tree and I looked up and at the same time electricity went running through my body, and I looked up and I could see the smoke just boiling from that boy's foot, just boiling up like that and black smoke and I realized what was going on then and so in turn the only thing I could think about was my little belt that I had on,—I had heard never touch a person while they are being electrocuted and I could see that that was what was happening at that time and I pulled my belt off and made another attempt to get nearer him to attempt to put it around his leg or something to pull him away from it, and as I did this electricity hit me so hard till I was just,—I just had to come back down in a hurry and I only got about half way from where I was at back to the ground and Douglas fell out right down by me and hit the ground and when he did I jumped down, 'cause I was right over him at that time."

The witness testified that intestate, while in the tree, had one hand around the top wire and his foot on the bottom wire and smoke was boiling up from it. Examination of intestate's body showed that his hand and foot had been burned.

Defendant's two wires, which ran through the tree, carried 7200 volts. The wires were uninsulated, that is, bare.

Jimmy Blackwell, aged 14, cousin of intestate, testified on cross-examination that the tree "was pretty easy to climb up." Two or three boys in addition to intestate climbed the tree that afternoon.

Mrs. Brackett, who lived across Price Morris Road opposite the tree, testified that Price Morris Road was about one-half mile long; that "At least 50" people lived on Price Morris Road on the day in question; that about that number had lived there for one or two years prior to that date; that about 30 children lived there over that period; that Price Morris Road is a "cut-off road" and those people "have to come out to the highway, or come from the highway down to Price Morris Road" and "They definitely have to use Price Morris Road," "It's the only route"; that they catch school buses there; that she had lived there "Around 10 years"; that the children use Price Morris Road to ride their bicycles, to walk to the store and back, and to catch school buses "right close to this very tree"; that there were fruit trees and berry vines along beside the tree; that she had noticed children in that vicinity and has picked berries there herself; that she has seen children in trees in that vicinity on her property just on the opposite side of the road from the tree where intestate met his death, but she never saw a child in that tree.

Defendant's wires were installed in 1939. The last record of trimming or pruning the tree was in the spring of 1953. Intestate's death was in 1957.

There is evidence that the tree was on land owned by Mrs. and Mrs. Griffice. Defendant had a permit, or easement, which

 

authorized defendant to maintain its lines and poles over the land, and also gave defendant the right to "cut and keep clear of all trees, * * * that may injure or endanger said lines."

■ Whatever status intestate may have occupied as to Mr. and Mrs. Griffice, intestate was not a trespasser as against the defendant, which owned neither the land nor the tree. Birmingham Ry., Light & Power Co. v. Cockrum, 179 Ala. 372, 60 So. 304; Woodward Iron Co. v. Burges, supra. The fact that the injured child was trespassing upon a third party's property at the time of the injury is no defense. Godfrey v. Kansas City Light & Power Co., supra.

■ There was evidence tending to show that the tree was easy to climb. It was beside a road along which the community's children constantly passed. It was directly across the road from other trees. The evidence positively shows that children had climbed those other trees on previous occasions. Certainly, under this evidence it would be reasonable to anticipate that children would again climb the other trees across the road. The tree which intestate climbed was easily accessible to boys and "pretty easy to climb up." What reason forbids the inference that a boy could be expected to climb the tree which intestate climbed? We think there is none.

We think the jury could infer that a boy might reasonably have been expected to climb the tree that intestate climbed and, therefore, that defendant was bound to anticipate that a boy would climb it and, consequently, under a duty to maintain its wires in a manner reasonably calculated to guard against injury, from contact with defendant's wires, to a boy climbing the tree which intestate climbed.

■ As the defendant was not entitled to the general charge as to the negligence counts, it was, of course, not entitled to same as to the whole case. Woodward Iron Co. v. Burges, supra.

For the error indicated, the judgment is reversed and the cause remanded.

Reversed and remanded.

LIVINGSTON, C. J., and LAWSON and GOODWYN, JJ., concur.