ANELIOUS O. CHICKERING, Admr.

*vs.*

LINCOLN COUNTY POWER COMPANY.

Lincoln.    Opinion December 27, 1919.

*Rule of pleading in actions of tort relative to alleging the duty owed plaintiff by defend-ant. Rule where declaration contains direct and positive averments of fact from which the law may imply an existence of duty. General rule holding that a person must have, or in the exercise of ordinary care should have, knowledge of the dangerous conditions to which he has exposed himself before he can be held guilty of contributory negligence.*

Action brought under the provisions of R. S., Chap. 92, Secs. 9-10 by the adminis-trator of the estate of Alton A. Chickering, to recover pecuniary damages resulting from the immediate death of the intestate in consequence of alleged wrongful acts or neglect of the defendant. Defendant filed general demurrer, which was overruled by presiding Justice.

*Held:*

1. By interposing a general demurrer, defendant did not raise any question of fact, but advanced an issue challenging the legal vitality of the case.

2. It is good pleading in an action of tort, founded on a defendant's negligence, for the declaration to allege what duty was owing by the one to the other, together with its breach and the consequential injury.

3. A declaration will not be intrinsically bad for want of such averments, for a plaintiff may make direct and positive averments of fact from which the law

will imply the existence of duty, and by like averments he may show wherein the defendant left duty undischarged

4. It would be difficult in an acceptable general rule to set bounds to the extent to which ownership makes it possible for one to use his own property without incurring liability for injury to the person or property of another in consequence of such use. The test is not whether the use caused the injury, or whether the injury was a natural result, but whether the use was a reasonable exercise of that dominion which the owner of property has, having regard to his own interests, the rights of others, and having too in view public policy.

5. As a general proposition, a person takes a risk of accident, or contributes negligently to his own injury, as the case and relation may be, only where he voluntarily exposes himself to a danger of the existence of which he knows, or, in the exercise of that degree of care which an ordinarily prudent person would exercise, he ought to know.

6. The law discriminates between children and adults, the feeble and the strong, and only requires of each the exercise of that degree of care to be reasonably expected in view of his age and condition. There is a radical difference in the degree of care to be exercised by one reasonably approaching a lurking, injurious e'ement of which he does not know, and by one approaching an obvious or known source of danger where he realizes that lack of heed on his part may impend disaster.

7. On the record here presented 't is held that the averments of the plaintiff's declaration set out a state of facts which can be held to impose liability on the defendant.

Action on the case brought under R. S., Chap. 93, Secs. 9-10. Defendant filed demurrer to plaintiff's writ and his amended declaration, and from the ruling of the presiding Justice overruling the demurrer, exceptions were filed. Judgment in accordance with opinion.

Case stated in opinion.

*George A. Cowan*, for plaintiff.

*A. S. Littlefield*, for defendant.

SITTING: CORNISH, C. J., HANSON, PHILBROOK, DUNN, MORRILL, DEASY, JJ.

DUNN, J. This action was brought, under the provisions of R. S., Chap. 92, Secs. 9 and 10, by the administrator of the estate of Alton A. Chickering, deceased, for the benefit of an only heir at law, to recover the pecuniary damages resulting from the immediate death

of the intestate, in consequence of alleged wrongful neglect of the defendant.

After setting forth plaintiff's appointment and qualification as administrator, and that he brought the suit for a statutory beneficiary, the substance of the declaration is that, on May 23rd, 1918, for transmitting electricity at high voltage from its generating plant at Damariscotta Mills, the defendant owned and operated a line of posts and wires, extending in and along a highway called the River Road in Newcastle; that defendant "wrongfully, negligently and carelessly maintained said wires, with no insulation whatever, or any other protection therefrom, along said highway and past the plaintiff's residence, situated on the east side of and adjoining said highway;" that said wires were "wrongfully, negligently and carelessly strung from the cross-arms on the poles" among the branches of a shade-tree in plaintiff's yard, "said wires being hidden from view by the foliage thereof, and being less than sixteen feet from the ground;" that intestate, a minor of the age of 12 years, playing that day, as he was entitled to, about plaintiff's premises, where also intestate lived, climbed the tree where the wires were run, "and while in said tree said wires came in contact with his body, without fault on his own part, and he was electrocuted and instantly killed thereby." Other allegations of the declaration are not essentially important of recital at this time.

By interposing a general demurrer, the defendant confessed all the facts well pleaded by its opponent to be true; but, relying on some predicated defect of substance, by the rules of law arising on those facts, it denied that plaintiff stated a cause of action. In other words, defendant did not raise any question of fact. It raised an issue challenging legal vitality of the case. The question for review is whether demurrer properly was overruled.

Although the line of posts and wires was located in and along a public way, it was, nevertheless, on the record before us, rightful property of the defendant. Granting that the poles and wires were legal structures, the owner would be liable only for carelessness or negligence in their erection or maintenance. R. S., Chap. 60, Sec. 27.

It would be difficult, in an acceptable general rule, to set bounds to the extent to which ownership makes it possible for one to use his own property without incurring liability for injury to the person or

property of another, resulting from such use. The test is not whether the use caused injury, or whether injury was the natural consequence, but whether the use was a reasonable exercise of that dominion which the owner of property has, having regard to his own interests, the rights of others, and having too in view public policy. When a person attempts to do that which is useful, usual or necessary, as well as lawful, if done under proper conditions, and injury unexpectedly results, it would be at variance with legal principles to say that he does it at the peril of being adjudged guilty of inexcusable wrong, if it errs as to fitting manner of performing it. For the doing of an act without right, a person may be adjudged guilty as a trespasser, but if he had a right to do the act, the question of whether he reasonably exercised that right turns upon his negligence, within the latitude for discrimination or distinction which that form of action affords.

"Actionable negligence," said Whitehouse, J. in *Boardman* v. *Creighton*, 95 Maine at page 159, "arises from neglect to perform a legal duty." In the declaration under consideration there is absence of specific allegation of duty owed by defendant to plaintiff's intestate, and of breach of that duty, with resulting injury. It is good pleading in an action of tort, founded on a defendant's negligence, for the declaration to allege what duty was owing by the one to the other, together with the breach of that duty, and the consequential injury. But a declaration would not be intrinsically bad for want of such specific averments. A plaintiff may make direct and positive averments of fact from which the law will imply the existence of duty, and by like averments he may show wherein the defendant left duty undischarged. "When it" (the declaration) is founded on the obligation of law, unconnected with any contract between the parties, it is sufficient to state very concisely the circumstances which give rise to defendant's particular duty or liability." 1 Chitty on Pleadings, Section 397. By direct averment a pleader must at least state facts from which the law will raise a duty, and show an omission of the duty, with injury in consequence thereof. 29 Cyc., 567. It is sufficient to allege facts in a general way, which will give the defendant notice of the character of the proof that would be offered to support the plaintiff's case. There are many cases where, when certain facts are shown, a general allegation of negligence or want of care gives all the information needed. Sufficiency of the pleadings must be determined upon the facts from which the legal duty is

deduced.  *Marvin Safe Company* v. *Ward*, 46 N. J. L., 19, 23, citing *Seymour* v. *Maddox*, 16 Q. B., 326.  Reasonable certainty in the statement of essential facts is required to the end that defendant may be informed as to what he is called upon to meet on the trial.   Facts showing a legal duty, and the neglect thereof on the part of the defendant, and a resulting injury to the plaintiff, should be alleged. 29 Cyc., 565.

This declaration sets out conjoined acts of negligence, both of which may be true, and both of which coalescing as a single act, may have caused the accident.   Shorn of technical phraseology, plaintiff charges that defendant negligently had a dangerous wire wrongfully, carelessly, and negligently strung.   In reply, the theory of the doctrine of attractive nuisances, familiar in the turntable cases, has been discussed by counsel.   That doctrine is that he who creates on his premises or leaves there a dangerous machine or thing alluring to children, thereby impliedly invites children to endangering play; and, if they come, and he fail to exercise due precaution to protect them from injury resulting from their play, liability in damages for negligence attaches.   This doctrine never has been adopted in Maine. *McMinn* v. *Telephone Company*, 113 Maine, 519.

In the transmission of electricity high regard must be had to the safety of the public.   It cannot be said as a matter of law that it is the duty of an electric company, regardless of where its line may be and as to whom injury may come, to insulate or otherwise extraordinarily guard wires strung, by virtue of a legal location, above the general sphere of hazard.   This duty has been held to be limited to points where there is ground to apprehend that a reasonably prudent person may come in close proximity with the wires.   *Wetherby* v. *Twin State Company*, (Vt.), 75 Atl., 8.   In the case here, it appears that defendant had a high tension transmission line extending along the highway to and beyond the plaintiff's residence, the wires stretching between the branches of a shade-tree in his yard. Intestate, while at play, climbed into the tree, and, as the immediate result of contact there with a naked wire, was instantly killed by an electric shock.   Trees growing about a family home are not primarily for boys to play in.   But by climbing a tree a boy would not altogether remove himself from the pale of the protection of the law.   In constructing and maintaining a line for transmitting the subtle agency of electricity, no one may with impunity totally disregard the natural

habits and the childish inclinations of boys at play to climb the door-yard shade-trees. Human life is short enough, and its burdens and responsibilities come soon enough, at best. To take from boyhood the legitimate pleasures and adventures of tree climbing, would unduly restrict the confines of that memory cherished domain, and lessen life's joys both there and thereafter.

As a general proposition, a person takes the risk of accident, or contributes negligently to his own injury, as the case and relation may be, only where he voluntarily exposes himself to a danger of the existence of which he knows, or, in the exercise of that degree of care which an ordinarily prudent person would exercise, he ought to know. The law imperatively imposes upon everyone that, proportioned with the danger to be avoided, he should use care for his own protection. Yet, as Mr. Justice Harlan approvingly said in *Union P. Ry. Co.* v. *McDonald*, 152 U. S., 262, 38 Law Ed., 434, "the law discriminates between children and adults, the feeble and the strong, and only requires of each the exercise of that degree of care to be reasonably expected in view of his age and condition." *Reynolds* v. *N. Y. Central &c. Railroad*, 58 N. Y., 248. Children are not holden to the same extent of care that adults are. They are bound to use that degree of care which ordinarily prudent children of their age and intelligence are accustomed to use under like circumstances. The age and intelligence of a child are important factors in determining whether due care has been used. *Colomb* v. *Street Railway Company*, 100 Maine, 418, 420. The capacity, the intellignece, the knowledge, the experience and discretion of the individual child are always evidentiary circumstances. There is no absolute standard. Plaintiff's intestate was 12 years of age. A bright, intelligent boy of that age, in the possession of all his faculties, has been held to be sui juris (*Crosby* v. *Railroad Company*, 113 Maine, 270; *Gleason* v. *Smith*, 180 Mass., 6), and his conduct measurable by the standard of that of boys of like age who are ordinarily careful. *Crosby* v. *Railroad Company*, supra.

Presence of the wires might cause a person to surmise them of dangerous character. But, in and of itself, a wire is inoffensive. Many a yard has wire strung through it as a piece of mechanism, to which electricity is ever stranger. Again, wires charged with electric current may be harmless and they may be highly dangerous. The difference is not apparent to ordinary observation. "While an

expert" said Judge Lathrop in *Griffin* v. *United El. Lt. Co.*, 164 Mass., 492, "may consider it dangerous to touch any wire, unless he knows it to be a harmless one, there was evidence that the plaintiff was not an expert, and did not know that an electric light wire would do any hurt.—The question of his due care was for the jury." Electricity gives no warning of its presence in intimate association with wire. It is not visible. It is odorless, colorless, and silent; a violent and mysterious force and power of nature subordinated to the gainful and the highly serviceable use of man. A person seeing a wire that he knows is, or may be, carrying this perilous agency should in duty avoid coming in contact therewith. He is not, however, entirely open to the charge of contributory negligence if he assume that the owner of the wire has discharged positive duty at places where people reasonably may be expected to go for work, business, or pleasure. Failure of the one to perform duty does not relieve the other of all necessity for care. A person may never safely assume that a wire carrying electricity is wholly free from danger. For the reason that a wire may not carry any current at all, or may carry a current that is not dangerous, or carrying a current dangerous to the safety of mankind generally may be sufficiently safeguarded, there is radical difference in the degree of care to be exercised by one reasonably approaching a lurking, injurious element of which he does not know, and by one approaching an obvious or known source of danger where he realizes that lack of heed on his part may impend disaster. Whether intestate had been admonished of the danger hidden in the wire; what opportunity he had had to inform himself as to the existing situation and its dangers; for what length of time to his knowledge the wire had been in place and in use; whether he was equal in capacity and experience to the ordinarily careful boy of his age; whether he was bright, quick, intelligent and active; what care or precaution, if any, he actually took to avoid injury, and other inquiries into which a subject of this nature might broaden out, demurrer to the declaration does not develop.

Courts elsewhere have passed upon cases resembling this. In *Mullen* v. *Wilkes-Barre Gas & Electric Co.*, 229 Pa. St., 54, a boy of tender years while at play climbed a chestnut tree standing in the sidewalk of a public street, and was injured by coming in contact with the defectively insulated wire of a corporation engaged in furnishing electric light. The reviewing court said, that on the main question

of whether danger to anyone was reasonably to be apprehended because of the condition of the wire, the case was close. In other respects, it adopted the reasoning of the trial court and affirmed judgment for the plaintiff.

*Temple* v. *McComb City El. Lt. & P. Co.*, (Miss.), 42 So., 874, 11 L. R. A., (N. S.), 449, was brought by a child 10 years old to recover for injuries caused by an uninsulated wire which defendant had placed in a tree in a highway. Plaintiff came in contact with the wires while climbing among the branches of the tree. Reversing judgment for defendant, Chief Justice Whitfield, said: "The appellee had the right to such reasonable use of the streets for its poles and wires as the conditions existing at the time in the community warranted. On the other hand, the appellant had the reciprocal right to what was a reasonable use of the streets on his part.—Whether this appellee knew that this particular small boy was in the habit of climbing this tree or not, it is clear from the averments of the declaration that it did know the tree, the kind of tree, and, knowing that, knew what any person of practical common sense would know,—that it was just the kind of a tree that children might climb into to play in the branches."

The limb of a tree on which a boy was sitting broke, and he came in contact with an uninsulated wire passing through the tree; below where he had sat. The court held that lack of insulation of the wires, and not the breaking of the limb, was the proximate cause of the injury, and that defendant reasonably could have anticipated that a boy would climb the tree. *Thompson* v. *Flater*, 197 Mo. App. 247. In *Sweeten* v. *Pacific Power & Light Co.*, 88 Wash., 679, 153 Pac. 1054, an electric light company permitted its wires from which the insulation had become worn, of which fact its manager was warned, to remain in a large tree in a public alley where children habitually played. That company was held liable for the death of an eight year old boy who came in contact with the wires while in the tree. *Denver Con. El. Co.* v. *Walters*, (Colo.) 89 Pac., 815, was a case where a boy 12 years old sought to recover for injuries caused by contact with defendant's uninsulated wire affixed to his father's house for carrying electricity for lighting purposes there. Judgment in his favor was reversed on other grounds, but the court said, that wherever there was a reasonable probability of accessibility of the appliances to and by children, the strict rule of the highest degree

of care was to be invoked.    In *Bent n* v. *North Carolina Service Corp.*, 81 S. E., 448, the electric company was held liable for the death of a boy who came in contact with its high power wires where they passed  through a tree in the street, and the insulation had been worn out.   Said the court:   "Defendant was bound to have reasonably expected small boys in the neighborhood to have climbed that sort of a tree."   "Certainly," it added, in answering the contention that the boy's presence in the tree made of him a trespasser, "the boy was not trespassing upon the property of the defendant."  In *Thompson* v. *Tilton El. Lt. Co.*, 77 N. H., 92, 88 Atl. 216, it was held that defendant was liable for the death of a boy who was killed while playing in a road, as he leaned against a pole carrying defendant's wires and came in contact with a chain used to raise and lower the electric lamp.   The court said that the boy was lawfully in the highway, and that he was guilty of no trespass against the defendant.   *McCrea* v. *Beverly Gas & Electric Company*, 216 Mass., 495, was an action by a city employee against a public service corporation maintaining wires transmitting electricity.   While climbing a tree in the performance of his duties, plaintiff was injured from an electric shock communicated by a wire of the defendant.   It is said in the opinion:   "Wires carrying a current with a voltage of five thousand volts are  exceptionally dangerous and . require extraordinary precautions;  and the higher the voltage the greater the precautions that are required."   .   .   .   "The necessity of men climbing trees to do the required work on moths was known, and it is possible to insulate electric wires.   The wires passed through or by trees at fifty places at least.   In spite of that no attempt was made by the defendant to insulate the wires at those points."

It may be that the dangerous character of a wire carrying electricity at high voltage would be unaffected by insulation.   A situation is conceivable in which insulation originally adequate might tend, from partial and unnoticed wear, to increase the degree of danger.  Perhaps such wires had better be left naked.   These questions are not now presented for decision.   Plaintiff's contention is that his intestate, exercising due care on his own part, was where he was of legal right entitled to be, and that he was not bound to take the premises as he found them;  that a wire apt to inflict injury there negligently placed and negligently maintained by the defendant,

without insulation and without warning or safeguard whatever, cause deplorable accident.

Delivering the opinion of the court in *Wetherby* v. *Twin State Gas & Electric Co.*, supra, Justice Heselton says:    "The business of transmitting electricity, while indispensable to society, must be conducted with a very high regard for the safety of the public, and the thoughtlessness, inexperience, lack of judgment, and misjudgment of children of tender years must be taken into account; but the courts cannot make electric companies insurers of the safety of children, more than of others, nor require of such companies, in the circumstances of their business, a degree of care, prudence and foresight beyond that which is given to careful and prudent men to have and exercise in such or like circumstances."    Reason and humanity alike approve the rule so well defined by the Vermont jurist.    Adopting it in the case at bar, it is our conclusion that the averments of the plaintiff's declaration set out a state of facts which can be held to impose liability on the defendant.

*Exceptions overruled.*