GEORGE J. REYNOLDS ET AL.

*vs.*

W. H. HINMAN COMPANY

Sagadahoc.    Opinion, October 9, 1950.

*Edward W. Bridgham,*
*Harold J. Rubin,* for plaintiffs.

*Verrill, Dana, Walker and Whitehouse,* for defendant.

344

Sitting: Murchie, C. J., Fellows, Merrill, Nulty, Williamson, JJ. (Thaxter did not sit.)

Nulty, J. This case comes before this court on exceptions by the plaintiffs to the sustaining of a special demurrer setting forth several causes of demurrer filed by the defendant. The declaration contains three counts. The first count alleges that the plaintiffs on or about the first day of December, 1946, owned real estate and a dwelling house in Bath, Maine, in close proximity to U. S. Highway No. 1, a public highway on which the defendant was engaged in public construction work; that in the course of said construction work the defendant, through its servants and agents, blasted rock formations and ledges by the use of an explosive, namely, dynamite; that it was defendant's duty to so carefully do the blasting that plaintiffs' property would not be damaged by the force of the explosions; and that the explosions and vibrations from the blasting did cause severe damage to the plaintiffs' property. The second count in the declaration is substantially the same as the first count, the difference being that there is an allegation that the defendant so negligently blasted rock formations that the force of the explosions and vibrations caused severe and serious damage to the plaintiffs' property. The third count in the declaration is substantially the same as the first two except that it alleges that the defendant negligently, carelessly and wantonly blasted with excessive amounts of explosives.

One of the causes of demurrer set forth in the special demurrer to the first count in the declaration is that it is not sufficient in law because the plaintiffs have averred that it was the duty of the defendant, its servants or agents, to so carefully and properly blast the rock formations that the property of the plaintiffs would not be destroyed or damaged by the force of such explosives, whereas the duty of the defendant, its servants or agents, was only to use reasonable care in such blasting. Another cause of special de-

murrer to the first count is that it is not sufficient in law because the plaintiffs have failed to allege in said first count that the damage complained of was caused by any negligence or want of due care on the part of said defendant, its servants or agents. The first cause for special demurrer to the second count in the declaration is that the plaintiffs have alleged it to be the duty of the defendant to so carefully and properly blast that the property of the plaintiffs would not be damaged by the force of said explosions, whereas, the duty of the defendant, its servants or agents, was only to use reasonable care in such blasting. Another cause for special demurrer to the second count challenges its sufficiency because it alleges that defendant so negligently blasted as to cause damage to plaintiffs' property without setting forth in what particular or particulars the defendant, or its servants or agents, were negligent. The cause for demurrer to the third count of the declaration challenges its sufficiency because it states that it was defendant's, or its servants' or agents', duty to so carefully blast that plaintiffs' property would not be damaged by the force of said explosions, whereas its duty was only to use reasonable care in such blasting. The plaintiffs joined in the special demurrer and it was sustained as to all three counts in the declaration and plaintiffs seasonably filed exceptions.

The special demurrer in this case, in the opinion of this court, points out particular imperfections in the declaration and under our decisions beginning with *Neal* v. *Hanson,* 60 Me. 84, 85, when the defect is a matter of form and not of substance it must be specially set forth. See also *Boardman* v. *Creighton,* 93 Me. 17, 44 A. 121; *Couture* v. *Gauthier,* 123 Me. 132, 122 A. 54; *Estabrook* v. *Webber Motor Co.,* 137 Me. 20, 15 A. (2nd) 25, 129 A. L. R. 1268.

Passing for a moment the first count in the declaration and taking up the second and third counts, an examination discloses that the second count attempts to invoke the doctrine of *res ipsa loquitur,* which is, according to the author-

ities, merely a rule of evidence and not a substantive rule of law and the most that may be said for it is that the doctrine allows an inference that may constitute evidence of negligence which may be weighed and considered either by a jury or a court as against the evidence adduced by the defendant in rebuttal thereof. It is sometimes said to be an exception to the general rule that negligence is not to be presumed but in fact it probably is a qualification rather than an exception to the general rule of evidence that negligence must be affirmatively proved in that it relates to the mode rather than the burden of establishing negligence. See 38 Am. Jur., Par. 298, Page 994, also *Edwards* v. *Cumberland County Power & Light Co.*, 128 Me. 207, 214, 146 A. 700, and *Chaisson* v. *Williams,* 130 Me. 341, 156 A. 154. In any event, the second count, as above stated, does not set forth in what particular or particulars the defendant or its servants or agents were negligent. This failure will be commented upon later, after we consider the third count in the declaration.

Said third count charges the defendant, its servants or agents, with negligently, carelessly and wantonly blasting with excessive amounts of explosives without any specific allegation or description of the defendant's, its servants' or agents', negligence.

With respect to the second and third counts of the declaration, the plaintiffs set forth in their brief and practically admitted in oral argument that they did not expect this court to adopt the rule of *res ipsa loquitur* and that so far as the third count was concerned they admitted both in their brief and at oral argument that the third count depended upon proof of specific acts of negligence. This court has on many occasions set forth the law of this state with respect to the duty of a plaintiff in an action of negligence. In *Nadeau* v. *Fogg,* and *Watier* v. *Fogg,* 145 Me. 10, 70 A. (2nd) 730, we said:

> "Under the law of this state it is the duty of the plaintiff in an action of negligence to inform the

defendant of the facts upon which he relies to establish liability for the injuries alleged and a plaintiff must set out a situation sufficient in law to establish a duty of the defendant towards the plaintiff and that the act complained of was a violation of that duty. *Knowles* v. *Wolman*, 141 Me. 120, 39 A. (2nd) 666. The well established applicable principles of pleading in negligence cases have been concisely stated in *Chickering* v. *Lincoln County Power Company*, 118 Me. 414, 417, 108 A. 460, 461, and again restated in *Ouelette* v. *Miller*, 134 Me. 162, 166, 183 A. 341, and also in *Estabrook* v. *Webber Motor Co.*, 137 Me. 20, 25, 15 A. 2d 25, 129 A.L.R. 1268. In *Chickering* v. *Lincoln County Power Company*, supra, it is stated 'actionable negligence arises from neglect to perform a legal duty. * * * By direct averment a pleader must *at least state facts* from which the law will raise a duty, and show an omission of the duty with injury in consequence thereof. * * * * * Reasonable certainty in the statement of essential facts is required to the end that defendant may be informed as to what he is called upon to meet on the trial. Facts showing a legal duty, and the neglect thereof on the part of the defendant, and a resulting injury to the plaintiff, should be alleged.' "

The special causes of demurrer with respect to the second and third counts in any event reach the questions raised by the defendant and under the authority of *Nadeau* v. *Fogg* and *Watier* v. *Fogg, supra,* it is our opinion that the special causes of demurrer applicable to each count were properly sustained because the declarations in the second and third counts do not conform to the well recognized principles of negligence pleading set forth above. This leaves for disposal and consideration the first count in which there is no allegation of negligence. The plaintiffs seek to apply to their alleged damage from concussion and vibration the rule of absolute liability which rule is that a man, though acting entirely without fault, is liable for the damaging consequences of his innocent acts. This rule is not founded on

negligence or fault or liability but is presumed from the circumstances of the action. Our state has never adopted such a rule, but it has been adopted in a number of states and the special causes of demurrer to the first count in the declaration squarely put the question before this court. In passing it should be noted that unless we do adopt the rule of absolute liability sought by the plaintiff, the exceptions to the sustaining the special causes of demurrer to said first count should be overruled for the reasons hereinbefore set forth in that said first count does not conform to the well recognized and decided principles of negligence pleading in use in this state. Professor Jeremiah Smith, in 33 Harvard Law Review, 542, 550, in an article entitled "Liability for Damage to Land by Blasting," in which article the authorities are extensively reviewed, says, in part:

> "The history of law as to the former absolute liability in the absence of fault, and as to the present general requirement of fault as a requisite to liability, can be stated very briefly. Speaking generally, the modern law is a reversal of the ancient law.

> "In old days it was the general rule that a man, though acting entirely without fault, was liable for the damaging consequences of his innocent acts. In some cases where this doctrine worked extreme hardship, an innocent actor was exonerated; but these instances of nonliability were exceptions.

> "At the present time, it is the general rule that fault is requisite to liability. In rare instances the law imposes liability in the absence of fault; cases where a defendant is held to have 'acted at peril.' But these instances are exceptions to the general rule which requires fault as an element of liability."

The author continues in Note 35:

> "These exceptions are attempted to be justified on the ground that they are cases of 'extra hazardous uses.' It is alleged that there are various

classes of extra hazardous acts 'which are performable only at the peril of the doer'. * * * * * This doctrine imposing absolute liability for non-culpable accident—this holding that a man in certain cases acts at his peril—is regarded unfavorably by some of the best modern text writers (see Salmond on Torts, 4 ed., Preface v; Pollock's Law of Torts, 10 ed., 505, 511, 671, note s; 1 Street, Foundations of Legal Liability, 84, 85.) One objection to this classification is found in the difficulty of drawing 'the line between the danger which calls for care and the 'extra hazard.' 'There are, as yet no unanimously approved rules or criteria' as to this subject. * * * *"

"The earlier and later standards are thus compared by Professor Ames." 22 Harvard Law Review, 99:

" 'The early law asked simply, "Did the defendant do the physical act which damaged the plaintiff?" The law of today, except in certain cases based upon public policy, asks the further question "Was the act blameworthy?" The ethical standard of reasonable conduct has replaced the unmoral standard of acting at one's peril.' "

Professor Smith continues:

"The gradual adoption of the modern and now prevailing doctrine—that fault is generally a requisite element of liability in tort—has naturally induced an examination of the essence of fault in the legal sense. And this has given rise to the modern conception of a particular fault which formerly was hardly mentioned; viz., negligence."

Professor Smith, in the Harvard Law Review, Vol. 33, Page 551, then quotes from an article by him entitled "Tort and Absolute Liability":

"I. The doctrine that a man, in certain cases, acts at peril and is absolutely liable for nonculpable accidents is, as we

have already said, a survival from the early days when *all* acts were held to be done at the peril of the doer. When the courts, in more recent times, were gradually coming to adopt the doctrine that fault is generally a requisite element of liability in tort, the law on the subject of liability for negligence was not so fully developed as it is now. If the wide scope and far-reaching effect of the law of negligence had then been fully appreciated, it is quite probable that the courts would not have thought it necessary to retain any part of the old law of absolute liability for application in certain exceptional instances.

"II. There was 'a time when the common law had no doctrine of negligence.' It has been said that, in the earlier stages of the law, 'there is no conception of negligence as a ground of legal liability.' In Holdsworth's 'History of English Law,' the author speaks of 'the manner in which the modern doctrines of negligence have been imposed upon a set of primitive conceptions which did not know such doctrines.' Mr. Street says that the law of negligence 'is mainly of very modern growth.' 'No such title is found in the year books, nor in any of the digests prior to Comyns (1762-67).' Sir Frederick Pollock says: 'The law of negligence, with the refined discussions of the test and measure of liability which it has introduced, is wholly modern; . . .' Professor E. R. Thayer says 'that law' (the law of negligence) 'is very modern — so modern that even the great judges who sat in *Rylands* v. *Fletcher* can have had but an imperfect sense of its reach and power.' '. . . the law of negligence in its present development is a very modern affair, rendering obsolete much that went before it.'

"III.  At the present time it is generally unnecessary, in order to do justice to a plaintiff, to adopt the doctrine of acting at peril.  Professor E. R. Thayer says: '. . . the law has at its hands in the modern law of negligence the means of satisfying in the vast majority of cases the very needs which more eccentric doctrines are invoked to meet.'  If the case is a meritorious one and proper emphasis is laid on the test of *'due care according to the circumstances,'* then 'the theory of negligence' will generally be 'sufficient to carry the case to the jury.'  'How powerful a weapon the modern law of negligence places in the hands of the injured person, and how little its full scope has been realized until recently, is well shown by the law of carrier and passenger. . . .' "

Professor Smith continues:

"At the present time, in an action for blasting, if the courts apply the modern law as to negligence, a plaintiff who has a meritorious case can generally recover without calling in aid the old rule of absolute liability (acting at peril).

"The plaintiff is likely to derive material assistance from two doctrines, one as to the amount of care required from defendant, the other as to the method of proving negligence."

"Assuming that there are no degrees of care *as matter of law,* yet there must obviously be a great difference in the amount of care required in various cases *as matter of fact.*  A jury will be told, and will usually find, that the amount of care required *in fact* will increase in proportion to the danger to be apprehended in case of neglect. Hence they will generally find that the amount of care required of a blaster is *in fact* very great.

"But not only is great care in fact required of the blaster.  In addition the plaintiff is much aided, as to the method of proving defendant's absence of care, by the application of the doctrine of *res ipsa loquitur.*

"This rule, taken literally, and without explanation, is liable to misapprehension.

"The doctrine does not dispense with the requirement that the party who alleges negligence must prove the fact, but relates only to the mode of proving it. The isolated fact that an accident has happened does not afford *prima facie* evidence that the accident was due to the negligence of the defendant. But if the accident, viewed in the light of the surrounding circumstances, is one which 'commonly does not happen except in consequence of negligence,' then if no explanation is offered, the jury *may*, not *must*, find that it was due to the negligence of the defendant. There is, however, no presumption of law, or fact, to this effect. The existence of negligence is 'an inference which the jury are authorized to draw, and not an inference which the jury are compelled to draw.

"This rule, even on a very conservative statement of it, would permit a jury to find the fact of negligence (a *prima facie* case of negligence) in a very large proportion of instances of damage due to the blasting, and the jury would often so find."

In 38 Am. Jur., Pars. 139 and 140, Pages 799 and 800 and Page 801 under "Negligence" the following statements with respect to "Escaping Substances" and "Particular Substances" appear in part:

"Par. 139. *Escaping Substances; Doctrine of Rylands* v. *Fletcher.*—The right of an owner to use his property and to perform acts thereon is not so absolute or so unlimited as to permit him to use it without taking into account injuries which a particular use is causing other persons or their property. There is a well-recognized class of cases which hold that a person who, for his own purposes, brings on his lands and collects and keeps there anything likely to do mischief if it escapes must keep it in at his peril; and if he does not do so, he is prima facie liable for all the damage which is the natural consequences of its escape. The leading case in support of this rule is *Rylands* v. *Fletcher,* LR 3 HL 330, one of the most cele-

brated of common-law precedents. * * * * * * * *
The doctrine of *Rylands* v. *Fletcher* is that a land-
owner may be liable for injuries caused by the
escape of a substance from his premises, even in
the absence of fault on his part.   However, his lia-
bility, as declared under the doctrine of that case,
is not absolute.   No liability exists where the
escape of the dangerous substance from the de-
fendant's premises is due to the plaintiff's own
fault, or to vis major, the act of God, or to acts of
third parties which the defendant had no reason
to anticipate.   While some American authorities
hold that an owner or occupant who stores upon
his premises a substance in such quantity and of
such a dangerous character that its escape from
the premises will result in an injury to others can
be held liable for damage so occurring, although
the escape occurs without negligence on his part,
the weight of authority in American jurisdictions
stands for the proposition that an owner or occu-
pant is liable for damage caused by the escape of
substances from the premises only where some
fault can be attributed to him. * * * * * * * * * *"

"Par. 140.—Particular Substances.—Rylands v.
Fletcher generally has been understood to hold
that an owner or occupant of land who brings
water on his premises by artificial means, and
stores it in tanks or reservoirs for his use, is liable
if the water escapes and injures the property of
an adjoining owner, and to this extent the doctrine
of the case has been approved quite generally, but
subject to the important modification insisted up-
on by some authorities, that the owner or occupant
is liable only where he is negligent or otherwise at
fault.   Extension of the principle to substantially
different facts has met with some judicial dis-
favor. * * * * * * * * * * The rule is that where an
owner or occupant of property sets a fire on his
premises for a lawful purpose, he is not, in the
absence of a statute to the contrary, liable for
damage caused by the spread of the fire to the
property of another, unless he was negligent in
starting or in not controlling the fire.   The same
is true of explosive instrumentalities according to

most of the decisions on the subject. The owner is not liable for injuries caused others in the absence of proof of negligence, unless he is shown to have created a nuisance."

We have set forth at some length the results of the studies of eminent jurists and legal students with respect to the rule of absolute liability and its conflict with the rule and growth of law of negligence and with those principles in mind let us now examine what our court has held with respect to those matters.

In *Bachelder* v. *Heagan*, 18 Me. 32 (1840), in an action of trespass on the case to recover damages, alleged to have been done to the plaintiffs' land, and to the fences and growth thereon, by the negligence of defendant in setting a fire on his own land, near to the land of the plaintiffs, and in not carefully keeping the same, our court said:

"By the ancient common law, or custom of the realm, if a house took fire, the owner was held answerable for any injury thereby occasioned to others. This was probably founded upon some presumed negligence or carelessness, not susceptible of proof. The hardship of this rule was corrected by the statute of 6 *Anne*, c. 31, which exempted the owner from liability, where the fire was occasioned by accident. The rule does not appear to have been applied to the owner of a field, where a fire may have been kindled. It may frequently be necessary to burn stubble or other matter, which incumbers the ground. It is a lawful act, unless kindled at an improper time, or carelessly managed. * * * * * * * * * *

"In *Clark* v. *Foot*, 8 Johns, R. 421, it was held, that if A. sets fire to his own fallow ground, as he may lawfully do, which communicates to and fires the woodland of B., his neighbor, no action lies against A., unless there was some negligence or misconduct in him or his servants. * * * * * Negligence or misconduct is the gist of the action. And this must be proved. In certain cases, as in actions

against inn-keepers and common carriers, it is presumed, by the policy of the law, where property is lost which is confided to their care. \* \* \* \* \* \* \* \* The defendant's fire was lawfully kindled on his own land. It is an element, appropriated to many valuable and useful purposes; but which may become destructive from causes, not subject to human control. Hence the fact, that an injury has been done to others, is not in itself evidence of negligence. \* \* \* \*"

In *Noyes* v. *Shepard,* 30 Me., 173, 178 (1849), in a case involving a pond of deep water from which the plaintiff had obtained permission of the defendant to tap the pond so that said plaintiff could get more water to run his mill, upon condition that he, the said plaintiff, would insert a flume and secure the water thoroughly from gullying and letting out the mass of water from the pond, plaintiff made a narrow canal to let the water flow into the brook above his mill but he did not entirely secure it so as to prevent the water from washing away some of the earth upon the bottom and sides of the canal. The action of the water created alarm to the defendant for fear the water would burst out of the pond and do extensive damage and the defendant put a dam across the canal but not of sufficient tightness to stop the water from leaking around the dam through the bank which were of gravel and quicksand. The defendant attempted, by degrees, to remove the dam but the flow of water got out of control and the channel grew wider and deeper and the pond burst out and serious damage was caused to the plaintiff's dam and mill and houses of many other persons. In that action we said:

"The rules of law applicable to cases of injury, occasioned by the lawful acts of one person to the property of another, appear to be quite well established.

"A person is required so to conduct in the exercise of his own rights and in the use of his own property, as not to do injury by his misconduct or

by the want of ordinary care to the rights or property of another.

\* \* \* \* \* \* \* \* \* \*

"Imminent danger expected from fire or flood, cannot excuse or exempt one from the use of ordinary care to prevent unnecessary injury to the property of others. What would under such circumstances be ordinary care must be determined by a jury; and it might not be the same care or an equal degree of caution, which would reasonably be expected, when there was little or no cause to apprehend immediate danger. However imminent the danger may be, a person must be held responsible for an injury to the property of another, occasioned by negligence of a less culpable character than such gross carelessness, as would reasonably authorize an inference, that it was done with an evil intent."

In another fire case wherein the plaintiff charged the defendant with kindling a fire upon his own land for a lawful purpose "at an unsuitable time and in a careless and imprudent manner" and that the fire, for want of proper care on his part spread, and caused great damage to the plaintiff's woodland, down timber, wood and bark, we said in *Hewey* v. *Nourse*, 54 Me. 256, 259 (1866):

"Every person has a right to kindle a fire on his own land for the purposes of husbandry, if he does it at a proper time, and in a suitable manner, and uses reasonable care and diligence to prevent its spreading and doing injury to the property of others. The time may be suitable and the manner prudent, and yet, if he is guilty of negligence in taking care of it, and it spreads and injures the property of another in consequence of such negligence, he is liable in damages for the injury done. The gist of the action is negligence, and if that exists in either of these particulars and injury is done in consequence thereof, the liability attaches; and it is immaterial whether the proof establishes gross negligence, or only a want of ordinary care on the part of the defendant. *Batchelder* v. *Keagan*

(Bachelder v. Heagan), 18 Maine, 38; *Barnard* v. *Poor,* 21 Pick., 380; *Tourtellot* v. *Rosebrook,* 11 Met., 462."

In *Simonton et al.* v. *Loring et al.,* 68 Me. 164 (1878), which was an action wherein the plaintiffs alleged that they had a stock of goods occupying the first floor of a block and the defendant occupied the hall in the third story together with the appurtenances thereto, including a urinal supplied with water, that the water faucet regulating the flow of the water into the urinal having been left wide open overflowed the bowl and flooded the store and injured plaintiff's stock. The defendants had possession, control and management of the hall and the appurtenances and we said:

"What is the rule regulating the liability of persons having the possession, control and management of tenements supplied with water as this was? The plaintiffs contend, *inter alia,* that the defendants were bound at their peril absolutely to prevent injury to others by the escape of the water, upon the principles enunciated by the English courts in *Fletcher* v. *Rylands,* 1 Exch. 265, S. C. Ho. L. 330. *Smith* v. *Fletcher,* 7 Exch. 305. *Nichols* v. *Marsland,* L. R. 2 Exch. Div. (C. A.) 1. This doctrine has received a *quasi* approval in *Ball* v. *Nye,* 99 Mass. 582. *Wilson* v. *New Bedford,* 108 Mass. 261, 266. While it has been criticised in *Swett* v. *Cutts,* 50 N. H. 437; *Brown* v. *Collins,* 53 N. H. 442; and utterly denied in Losee v. Buchanan, 51 N. Y. 476, 486. Whether the same principles will be applied by this court to similar circumstances we need not stop to inquire until such an occasion presents itself.

\* \* \* \* \* \* \* \* \* \*

"The rule of ordinary care affords reasonable freedom in the use, as well as reasonable security in the protection of property. For the degree of care which this rule imposes must be in proportion to the extent of injury which will be likely to result should it prove insufficient. In other words, ordinary care depends wholly upon the particular facts of each case—the degree of caution and dili-

gence rising, conforming to and being commensurate with the exigencies which call for its exercise. It must be equal to the occasion on which it is to be used, and is always to be judged of according to the subject matter, the force and dangerous nature of the material under one's charge. *Holly* v. *Boston Gas Light Co.,* 8 Gray, 123."

In *Burbank* v. *Bethel Steam Mill Co.,* 75 Me. 373, 379, (1883) which was an action to recover damages for burning of property caused by the use of a stationary steam engine from which a fire was communicated to plaintiff's house and barn, we said:

"Can the action be maintained at common law without proof of negligence of the defendants, or that their steam engine was a nuisance, in fact? It is claimed by the counsel for the plaintiff, that it can be, on the ground that the defendants erected their engine in violation of law, and having done so were insurers against all damage, which any one might sustain from its use; and in support of this proposition he cites and relies on *Ryland* v. *Fletcher,* 3 Law Rep. H. L. 330; *Jones* v. *Festiniog R. Co.* 3 L. R. (Q. B.) 733; *Salisbury* v. *Herchenroder,* 106 Mass. 458; *Frye* v. *Moor,* 53 Maine, 583.

"We think these cases are all distinguishable from the case at bar. The authority of *Rylands* v. *Fletcher,* has been denied by many of the courts in this country, and by some accepted. This court has neither denied nor accepted it, and we have no occasion now to do so. Its authority, however, is not to be extended beyond the class of cases possessing all the elements upon which the judgment of the court was based. It is believed that the courts in this country—certainly in this state—have never held it applicable to fires, rightfully set upon one's own premises, which escape and extend on to the property of others. (Simonton v. Loring, 68 Maine, 164).

"The case was before the House of Lords, on appeal from the exchequer chamber, (1 L. R. Exch. Cases, 265.) In the exchequer chamber the judg-

ment of the court was delivered by Blackburn, J., who stated the legal proposition upon which the case was decided as follows: 'We think that the true rule of law is, that the person, who for his own purposes, brings on his lands and collects, and keeps there *anything likely to do mischief* if it escapes, must keep it in at his peril, and, if he does not do so, is *prima facie* answerable for all the damage which is the natural consequence of its escape.' The House of Lords affirmed this rule as the law of the case. The essential element in this legal rule is, that the thing must be one *'likely to do mischief.'* The court cannot declare, as matter of law, that the defendants' stationary steam engine, if located in a proper place, and properly constructed and used, was, in its nature, calculated to do mischief to the property of any person. *Brightman* v. *Bristol,* 65 Maine, 435; *Losee* v. *Buchanan,* 51 N. Y. 476.

\* \* \* \* \* \* \* \* \* \*

"*Frye* v. *Moor,* does not sustain the rule claimed for the plaintiff. The law of the case is stated by Tapley, J., in the opinion of the court, as follows: 'The defendants caused an *unnatural* accumulation of water in a reservoir above the mill of the plaintiff. If accumulated rightfully as to this plaintiff, they must at least exercise ordinary care in letting it again pass into its ordinary and accustomed channels over the plaintiff's property. If accumulated wrongfully, and without any right or authority, as against this plaintiff, if they let it into its ordinary and accustomed channels, they do so at their peril, and they must be held responsible for the consequences of their wrongful act.' *It is believed to be the settled law of this state, that, to render the defendant liable without negligence, his act must be shown to be wrongful as against the plaintiff.*" (Emphasis ours.)

In *Chickering* v. *Power Co., supra,* an action was brought to recover pecuniary damages resulting from the immediate death in consequence of alleged wrongful neglect of the defendant. The defendant owned and operated a line of posts and wires extending along a certain highway used for the

360

purpose of transmitting electricity at high voltage. The plaintiff alleged that the defendant wrongfully, negligently and carelessly maintained said wires with no insulation whatever and that said wires were strung from cross arms on the poles among the branches of a shade tree in plaintiff's yard and that the plaintiff's intestate, a minor of twelve years, climbed the tree where the wires were run and without any fault on his own part was electrocuted and instantly killed. In this case a general demurrer was filed which had the effect of denying that the plaintiff had stated a cause of action. On the record the posts and wires were the rightful property of the defendant and we said:

> "It would be difficult, in an acceptable general rule, to set bounds to the extent to which ownership makes it possible for one to use his own property without incurring liability for injury to the person or property of another, resulting from such use. The test is not whether the use caused injury, or whether injury was the natural consequence, but whether the use was a reasonable exercise of that dominion which the owner of property has, having regard to his own interests, the rights of others, and having too in view public policy. *When a person attempts to do that which is useful, usual or necessary, as well as lawful, if done under proper conditions, and injury unexpectedly results, it would be at variance with legal principles to say that he does it at the peril of being adjudged guilty of inexcusable wrong, if it errs as to fitting manner of performing it. For the doing of an act without right, a person may be adjudged guilty as a trespasser, but if he had a right to do the act, the question of whether he reasonably exercised that right turns upon his negligence, within the latitude for discrimination or distinction which that form of action affords.*" (Emphasis ours.)

It will be seen from the above quotation that the question of whether the use of the property of the defendant was reasonable or unreasonable has considerable bearing on the question of liability, particularly if it turns out that the

defendant is engaged in a lawful act. In other words, use or dominion over one's own property is not absolute or unlimited but relative in that one is not permitted to use it without taking into account injuries that may be caused other persons and their property. The New York court in the case of *Losee* v. *Buchanan et al.,* 51 N. Y. 476, 485, which was a boiler explosion case and in which the authorities were extensively reviewed by the court, including the case of *Rylands* v. *Fletcher, supra,* makes the following statement after reciting various situations wherein one's own property is subject to the uses of others:

> "Most of the rights of property, as well as of person in the social state, are not absolute but relative and they must be so arranged and modified, not unnecessarily infringing upon natural rights, as upon the whole to promote the general welfare."

Our court very recently in the case of *Kennebunk, Kennebunkport and Wells Water Dist.* v. *Maine Turnpike Authority,* 145 Me. 35, 71 A. (2nd) 520, had occasion to examine and define what was reasonable and unreasonable use with respect to the rights of riparian owners on the same stream and came to the conclusion that a proper and reasonable use of the stream by an upper riparian owner did not necessarily give a right of action to a lower riparian owner provided the use was reasonable.

From our examination of the authorities mentioned herein, it is our opinion that the only logical rule for this court to adopt is the rule that fault is a requisite for liability. The other rule—that of absolute liability—seems to this court to be a rule of hardship which if used would necessitate many exceptions. In these days it is undoubtedly necessary that blasting be permitted. In other words, it is a lawful act and such being the case it is, if properly conducted, a reasonable relative use of one's property.

We, therefore, conclude from the record as it is before us that blasting was not only a lawful act but as said in

362

*Chickering* v. *Power Co., supra,* useful, usual and probably necessary and, so far as the record discloses, done under proper conditions; in fact, we must consider it a reasonable use of property. Such being the case, we believe the better rule to be that negligence not only must be alleged, but it must be proved. The plaintiffs in this action have not, therefore, alleged a cause of action under our rules of negligence pleading and the special demurrer to the first count, as well as to the second and third counts which we have heretofore commented upon, were properly sustained.

*Exceptions overruled.*