MILDRED COBB ALBISON
*vs.*
ROBBINS & WHITE, INC.

PERCY G. FREEMAN
*vs.*
ROBBINS & WHITE, INC.

MAXWELL S. SHAW
KATHRYN L. SHAW
*vs.*
ROBBINS & WHITE, INC.

ROBERT F. WEBBER
LINNIE A. WEBBER
*vs.*
ROBBINS & WHITE, INC.

Kennebec.   Opinion, August 2, 1955.

*Joly & Marden,*
*F. Harold Dubord,* for plaintiff.

*Locke, Campbell, Reid & Hebert,* for defendant.

SITTING: FELLOWS, C. J., WILLIAMSON, WEBBER, BELIVEAU, TAPLEY, JJ. MR. JUSTICE TIRRELL heard arguments of these cases and took part in conferences but died before the opinion was written.

FELLOWS, C. J. These cases come before the Law Court on plaintiffs' exceptions to the allowance by the Kennebec County Superior Court of a majority report of three referees.

These cases are four tort actions heard together by agreement in which the plaintiffs sought to recover damages for injuries to their respective houses resulting from blasting operations. The defendant was engaged in the construction of a certain tunnel for the Waterville Sewerage District located in close proximity to property owned by the plaintiffs and each of them, and during the course of the construction job, plaintiffs' properties were damaged as a result of blasting. The cases were referred to three referees with the right of exceptions reserved in matters of law.

After a full trial, two of the referees filed a report that in their opinion there is "no proof" that the defendant was

acting in a negligent manner, and found for the defendant. One of the referees filed a more comprehensive report and showed clearly that negligence had been established, and that there was liability on the part of the defendant. The defendant filed a motion with the presiding justice of the Superior Court asking that the majority report be accepted, which motion was granted and the majority report allowed. Exceptions by the plaintiffs were taken and allowed. Plaintiffs filed a motion that the minority report be accepted which was denied and exceptions taken.

During the progress of the trial, plaintiffs offered evidence to the effect that the defendant's employee in charge of the blasting, after being told that the first blast or blasts had caused serious damage, had informed the plaintiffs, or several of them, that they had no cause to worry about the damage which was manifestly and admittedly being caused because the defendant was covered by liability insurance, and that the plaintiffs would surely be compensated. The purpose of offering this evidence was stated by plaintiffs' counsel as being to show that because the man in charge of the job felt that all damage would be compensated by an insurance carrier, he did not exercise the degree of care which he should have exercised, and therefore was negligent. This evidence was excluded by the referees, and exceptions taken.

The plaintiffs in objecting to the acceptance of the majority report, and in support of their objection, set forth the following specific grounds of objections.

1. The majority of the referees erred in finding that the evidence did not support a verdict for the plaintiffs.

2. The majority of the referees erred in finding that the plaintiffs had not proved the negligence of the defendant.

3. The majority of the referees erred in finding that the defendant absolved itself of liability

because of the testimony of the superintendent that he was using the least amount of dynamite that was possible to get the rock out.

4. The majority of the referees erred in their conclusion that there was a burden on the part of the plaintiffs to show that the use of smaller charges of dynamite was reasonable and proper under the particular circumstances.

5. The referees erred in excluding the evidence offered by the plaintiffs concerning statements made by the defendant's superintendent to the effect that the defendant was covered by liability insurance and that the insurance company would pay for any damage caused by the explosions, the plaintiffs having offered this evidence as bearing upon the question of defendant's negligence.

The record shows that the defendant had about 150 feet of ledge excavation for a sewage tunnel to be made six feet square, and constructed to hold sewer disposal pipe. The tunnel excavation was a part of an extensive general contract in the city of Waterville, and the entire contract was to be completed within a year from the time the contract was signed.

At the first blasts, when the excavation was started, serious damage was done to the houses of the plaintiffs, and several plaintiffs went to the defendant's superintendent in charge and told him his blasting was seriously damaging their property. The superintendent told them that he was using the smallest amount of dynamite possible to get the work done, but he did not ever attempt to use a smaller amount to ascertain whether he could get rock out with the lesser charge. He continued to use the same methods as at first. The same charges of dynamite were used continually thereafter, causing great and continuing damage to the plaintiffs' properties with each blast.

The superintendent further said "when we are through we will take care of all damage," with further statements relative to insurance, which statements relative to insurance were excluded.

The defendant's superintendent said that he was using sixty sticks of dynamite, setting off twelve at a charge at one-fifth of a second intervals. When asked if he could not decrease the charge "he said that he couldn't."

The plaintiffs' houses and each of them were so shaken that ceilings and walls were cracked, dishes broken and thrown about and off shelves; ceilings fell; paper and paint injured; foundation walls were cracked; stairways damaged and torn from the wall; fireplaces and chimneys cracked and warped out of line and otherwise injured; openings made over windows and doors; large cracks opened in hardwood floors, and floors "buckled." In one instance the witness said his house "dropped," affecting all floors and staircases.

The majority report signed by two of the three referees citing the case of *Reynolds* v. *Hinman Co.*, 145 Me. 343, stated that "there was no other evidence submitted as to whether this particular ledge in this tunnel could be broken with less dynamite, or by detonations over a longer period of time, or by use of some other precautions to prevent damage to property in the near vicinity, or by other explosives or instruments than dynamite. On this basis we are forced to conclude that there is no proof that the defendant was acting in a negligent manner." The two referees found for the defendant.

The minority report by one of the three referees stated: "I believe that as a referee, I can make certain assumptions based on the common knowledge and experience of everyone. It is not always necessary to introduce testimony to place certain evidence properly before a referee, juror or

court. I know and believe I am entitled to consider in this case that the principal explosive ingredient in dynamite is nitroglycerin. A certain amount of dynamite will fracture a certain type of ledge. Varying the charge will vary the amount of ledge broken. Rock or ledge is rendered or fractured by the tremendous expansion of the gas released when the charge is exploded. The greater the charge, the greater is the expansion and the rendering and fracturing effect; the smaller the charge, the smaller is the expansion and the rendering and fracturing effect. These explosions cause more or less shock vibration in the area depending in some part on the size or quantity of the charge used. Less dynamite could have been used and less or no damage would have resulted and still rock and ledge in smaller quantities would have been rendered and fractured. The excavation would proceed at a slower pace but it could proceed.

A contractor who undertakes to blast a tunnel 150 feet in length through ledge within a prescribed period of time should know he can complete his work within the prescribed time without damage to dwelling houses in the area. He should know the geological formation. Disregard of the nature of the formation and reliance on the unrestrained use of dynamite to complete his work in the prescribed time, regardless of damage to nearby buildings, would not be exercising due care.

In any particular type of ledge, the power to fracture and break up a yard of ledge with one blast and the power to fracture and break up a foot of ledge with one blast depends mostly on the amount of dynamite used. This is all common knowledge.

I believe jurors or referees would be obligated to take into account all of the foregoing in considering the question of liability, provided they had before them the pleadings and evidence we have before us.

In this case, the superintendent of the blasting operation was quoted as describing his method and the quantity used as follows:

'Q. Did you have any talk with him about the amount of dynamite he was using?

A. Yes. He gave me a description of how he was doing it and the amount of dynamite he was using.

Q. Did he tell you how many sticks he was using?

A. Yes, he mentioned he was using sixty sticks of dynamite, setting off 12 at a charge at a fifth of a second intervals.

Q. Did you have any conversation with him as to whether or not the amount of dynamite could be lessened?

A. Yes. I asked if he could not decrease the charge, and he said that he couldn't. They had to get the job done so they would meet the other interceptor by June.'

The superintendent used the same quantity and method in blasting throughout the entire length of the tunnel. He was warned that the shock and vibration was doing damage to the dwelling houses of the plaintiffs in the neighborhood when he was just starting in the tunnel, after he had probably constructed the first fifteen or twenty feet of its length. The superintendent was quoted as saying that he would not decrease the charge because he had to get the job done by June. He did not attempt to lessen the shock and vibration by decreasing the charges he knew were repeatedly causing damage. I cannot believe that he should be excused for demolishing a house on the ground he had taken a contract to do the job in too short a time and therefore had to use charges calculated and known to be of demolition severity.

I would find for the plaintiff in this and the other similar companion cases, as I believe the conduct of the defendant, to say the least, was negligent, and resulting damage has

been demonstrated. There is no suggestion of negligence on the part of those whose property was damaged.

I do not construe the opinion in the case of *Reynolds* v. *Hinman Co.* as controlling these cases in view of the factual situation presented to us here. I do not interpret the *Hinman* case to hold that a dwelling house may be damaged or demolished by blasting with impunity under all circumstances. I feel the findings and conclusions of the other referees over-extend the application of the decision in the *Hinman* case. That case was decided solely on demurrer to the declaration. It appears not to have been charged that the defendant knew it did cause or was causing damage against the complaints of the residents in the neighborhood. Further, it did not appear whether two blasts occurred or whether there were numerous and long continued blasting over a period of months against repeated notices that damage was being done. In the case before us there is no demurrer. There was no request for particulars. The parties proceeded under the declaration as originally drawn and made full presentation of the facts as they saw them. In reaching my decision, I am not unmindful that negligence is not to be presumed in law merely because vibration and shock from the explosion of dynamite causes damage to nearby structures.

It may be that some damage was caused before defendant should be charged with negligence and liability. However, it is clear to me that after adequate warning other and further damage was caused. With the before and after damage blended, it may be difficult to distinguish between the former and the latter. I do not conceive this to be a reason for absolving the defendant from responsibility for all damage."

The court is of the opinion that the foregoing findings of the minority referee, under the circumstances of this case,

are correct and that the majority findings are clearly erroneous.

In the case of *Reynolds et al.* v. *W. H. Hinman Company*, 145 Me. 343, 75 Atl. (2nd) 802, 20 A. L. R. (2nd) 1360, which came before the Law Court on demurrer to the declaration, it was held that negligence on the part of a defendant, in a blasting case, must be alleged and proved. In the *Hinman* case this court, quoting the words of Professor Jeremiah Smith, said: "Assuming that there are no degrees of care as matter of law, yet there must obviously be a great difference in the amount of care required in various cases as matter of fact. A jury will be told, and will usually find, that the amount of care required in fact will increase in proportion to the danger to be apprehended in case of neglect. Hence they will generally find that the amount of care required of a blaster is in fact very great."

Care must be taken by a defendant in proportion to the danger involved. In other words, ordinary care depends on the circumstances of each particular case. Where the risk is great a person must be especially cautious. In fact a person might be and should be restricted in the use of an instrumentality if dangerous to person or property. *Simonton* v. *Loring*, 68 *Me.* 164; *Bacon* v. *Steamboat Co.*, 90 *Me.* 46; *Chickering* v. *Power Co.*, 118 Me. 414; *Edwards* v. *Power Co.*, 128 Me. 207, 212.

The continuation of blasting in the same manner as before, after warning, constitutes negligence under the circumstances of this case. See cases cited in annotation to the *Hinman* case where it is reported in 20 A. L. R. (2nd) 1360, and following pages.

In the case at bar, there is evidence, and to us, compelling evidence of negligence, because after being notified that serious damage was being caused to property of the plaintiffs by the first blasting, the defendant did not attempt to try

out lesser charges of dynamite. It did not attempt to determine for a certainty whether lesser amounts would "get the rock out." It continued to use the amounts of dynamite that caused and continually caused increasing injury. The defendant knew it. The superintendent said that he was going to continue and he did continue as before. The superintendent said he was using the smallest amounts possible in order "to get the rock out." His attitude showed not only negligence but also planned and determined disregard of property rights, and perhaps life or personal injuries.

The State of Maine and its people have for generations removed much rock and cut out untold numbers of ledges. The State is now blasting miles of ledge for new highways. It is rare, indeed, for damages such as in this case to be caused where the user has the knowledge he should have, and when proper care is exercised. This is well and commonly known. Our grandfathers who used black powder did efficient careful work, and why not here? Is it because the powder method is more expensive due to wages, and is a slower method? Is it an excuse for negligent use of dynamite, that it is quicker, less expensive, and in the opinion of a superintendent, if used in substantial quantities, that it can remove the ledge to "meet the interceptor by June?"

The plaintiffs offered evidence during the trial many times from several of the plaintiffs concerning statements made to them by the superintendent, to the effect that the defendant was covered by liability insurance and that there was no cause for worry on the part of the plaintiffs and that he (the superintendent) would continue to use the same charges, because the insurance company would pay for any damage caused by the explosions. This evidence was objected to by the defendant's counsel and was excluded. Exceptions to the exclusion were taken by the plaintiffs. We think the exclusion was correct. We know that there are some cases in other jurisdictions like the New Hampshire

case of *Herschensohn* v. *Weisman,* 119 Atl. 705, annotated in 28 A. L. R. 514, holding that where a person asked to be careful replied "don't worry, I carry insurance for that," the New Hampshire Court held the statement admissible because it implied that he would exercise and did exercise a lesser degree of care than the law required. The Maine Court, however, has several times considered the admissibility of similar evidence and has uniformly held that statements relative to the fact that the defendant was protected by liability insurance were not proper. See reasons stated in *Sawyer* v. *Shoe Company,* 90 Me. 369; *Richie* v. *Perry,* 129 Me. 440; *Skillin* v. *Skillin,* 130 Me. 223.

The question presented to this court is whether or not the Superior Court was correct in accepting the majority report of the referees. Considering the first and second objections to acceptance, as raised by the plaintiffs, in the light of this record, we are of opinion that it was error for the court below to accept the report.

The majority of the referees erred in their construction of the opinion in *Reynolds* v. *Hinman Co.,* 145 Me. 343, 75 Atl. (2nd) 802, 20 A. L. R. (2nd) 1360 and note, in holding "that there is no proof that the defendant was acting in a negligent manner," because the referees in effect erroneously held that the plaintiffs did not show by eye witnesses or by experts the methods used, and did not show that other methods would be proper, and further, that plaintiffs did not prove that smaller charges of dynamite could have been used to get the work done under the contract.

There is no absolute liability for damage by blasting. There is liability for damage which takes place from blasting carried on in a negligent manner. The test in this case is whether there is credible evidence to sustain the findings of the majority of the referees. We think not. The plaintiffs were admittedly in the exercise of due care. The defendant

was negligent, and from the statements and actions of its superintendent, recklessly negligent. The defendant was indifferent to probable consequences, which is the highest form of negligence, and is the antithesis of due care. The majority of the referees failed to take into consideration, what is common knowledge, that a slower method with more moderate charges of the explosive, would (if it had been tried) have caused little or no damage.

It was error for the presiding justice to accept the majority report of the referees. These exceptions to the acceptance must be sustained.

The exceptions of the plaintiffs to the refusal of the presiding justice to accept the minority report are not necessary to be considered, as the cases must go back to the Superior Court for further proceedings.

*Exceptions sustained.*

*The four cases remanded to the Superior Court for further proceedings.*